CITY OF DALLAS et al., Plaintiffs,

v.

UNITED STATES of America,
Defendants.

Felix A. Zamora et al., and Elsie Faye
Heggins et al., Defendants-Intervenors.

Civ. A. No. 78–1666.

United States District Court,
District of Columbia.

Dec. 7, 1979.

As Amended Feb. 25, 1980.

Charles S. Rhyne, Washington, D. C., for City of Dallas, Tex., Robert S. Folsom, Robert S. Sloan, plaintiffs.

Carmen L. Jones, U. S. Dept. of Justice, Washington, D. C., for United States of America and Griffin B. Bell, Attorney General of the United States, defendants.

Abelardo I. Perez, Washington, D. C., for Felix A. Zamora.

Richard S. Kohn, Lawyer's Committee for Civil Rights Under Law, Washington, D. C., for Elsie Faye Heggins.

Before MacKINNON, Circuit Judge, and PARKER and RICHEY, District Judges.

184

PER CURIAM:

This declaratory judgment action, which we now hold is moot, was brought by the City of Dallas to determine the validity of a voting plan for city council elections. The action was brought in this court pursuant to the Voting Rights Act, 42 U.S.C. § 1973c, and we initially refused the motion of the City of Dallas for summary judgment in its favor.

Subsequently, the original plan, which is the subject of this declaratory judgment action, was withdrawn, by repealing a city ordinance, and a new plan was enacted. The new plan has received the Attorney General's approval.[1] Since the City of Dallas now has an approved plan for holding its councilmanic elections, scheduled for January 19, 1980, the City has moved for dismissal of the declaratory judgment action involving the first plan on the grounds that the adoption of the second plan makes the first case moot. The Attorney General has consented to the City's motion.

Objections are interposed, however by the intervenors representing black and Mexican-American voters. Intervenors contend that this Court should exercise its inherent equitable powers to evaluate the new plan on the theory that both the repealed plan and the new plan which has been approved by the Attorney General establish, as required by the city charter, three at large seats on the eleven seat council, i. e., eight councilmen elected from wards as apportioned. This common thread between the two plans, the intervenors argue, provides a basis for concluding that the pending action is not moot.

■ We disagree. The Voting Rights Act requires approval of changes in procedures relating to voting, including apportionment of districts, in State or political subdivision under its prohibitions. 42 U.S.C. §§ 1973a, b. The statute, however, provides two alternative procedures for obtaining the required approval. Either the determination of the Attorney General *or* of a three judge court convened in this district, pursuant to the statute, provides the requisite approval.[2]

■ The first plan was never submitted to the Attorney General for approval but instead preclearance was sought from this Court in this proceeding. In due course plaintiffs moved for summary judgment

1. A copy of the letter approving the plan is appended hereto.

2. 42 U.S.C. § 1973c provides that each:
 . . . State or subdivision may institute an action in the United States District Court for the District of Columbia for a declaratory judgment that such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, or in contravention of the guarantees set forth in section 1973b(f)(2) of this title, and unless and until the court enters such judgment no person shall be denied the right to vote for failure to comply with such qualification, prerequisite, standard, practice, or procedure: *Provided,* That such qualification, prerequisite, standard, practice, or procedure may be enforced without such proceeding if the qualification, prerequisite, standard, practice, or procedure has been submitted by the chief legal officer or other appropriate official of such State or subdivision to the Attorney General and the Attorney General has not interposed an objection within sixty days after such submission, or upon good cause shown, to facilitate an expedited approval within sixty days after

such submission, *the Attorney General has affirmatively indicated that such objection will not be made.* Neither an affirmative indication by the Attorney General that no objection will be made, nor the Attorney General's failure to object, nor a declaratory judgment entered under this section shall bar a subsequent action to enjoin enforcement of such qualification, prerequisite, standard, practice, or procedure. In the event the Attorney General affirmatively indicates that no objection will be made within the sixty-day period following receipt of a submission, the Attorney General may reserve the right to reexamine the submission if additional information comes to his attention during the remainder of the sixty-day period which would otherwise require objection in accordance with this section. Any action under this section shall be heard and determined by a court of three judges in accordance with the provisions of section 2284 of Title 28 and any appeal shall lie to the Supreme Court.
 As amended Pub.L. 94–73, Title II, §§ 204, 206, Title IV, § 405, Aug. 6, 1975, 89 Stat. 402, 404. (Emphasis added).

from this Court that a portion of the election plan is exempt from Section 5 coverage, that the plan as then promulgated with an apportionment that provided two relatively secure minority seats, enhances minority voting rights and has neither a discriminatory purpose nor effect and that defendants are estopped by *Lipscomb v. Wise,* 399 F.Supp. 782 (N.D.Tex.1975) from relitigating issues relating to the dilutive effects of the proposed plan on minority voting strengths. Subsequently, acting on our suggestion an at earlier hearing, the City and the Attorney General negotiated agreement on a new plan. The question now before us on the motion to dismiss is whether the enactment of the new plan and the repeal of the city ordinance embodying the now-discarded plan moots this case. We hold that it does.

The standards for evaluating mootness in a declaratory judgment action were articulated by the Supreme Court in *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 959–60, 22 L.Ed.2d 113 (1968) where the Court stated that

> The District Court erred in holding that Zwickler was entitled to declaratory relief if the elements essential to that relief existed "[w]hen this action was initiated." The proper inquiry was whether a "controversy" requisite to relief under the Declaratory Judgment Act existed at the time of the hearing on the remand. We now undertake that inquiry.

> "[T]he federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues, 'concrete legal issues, presented in actual cases, not abstractions,' are requisite. This is as true of declaratory judgments as any other field." *United Public Workers of America v. Mitchell,* 330 U.S. 75, 89, 67 S.Ct. 556, 91 L.Ed. 754 (1947). "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise

test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). [footnote omitted]

■ Applying these standards we determine that the case is moot because as between the parties, the City of Dallas and the United States, there exists no dispute. The original plan has been repealed, the City of Dallas is not attempting to implement the repealed plan and thus, since the plan has been repealed the basis for the controversy that previously existed is now non-existent. The City of Dallas had invoked our jurisdiction to determine the legality of the first voting plan. Subsequently, during the pendency of that proceeding in this court, the City successfully obtained approval by the Attorney General of the new voting plan (see letter appended hereto). Such approval is one of the two methods provided by the Voting Rights Act for instituting new voting procedures in affected States or political subdivisions. Under the statute the Attorney General's approval is not reviewable in this court.[3]

■ As a result of the repeal of the first plan there no longer exists any controversy *between the parties.* This is buttressed by the Attorney General's acceptance of the new voting plan for councilmanic elections. The Attorney General and the City of Dallas have no controversy between them. There is thus no factual base for this court's jurisdiction.

■ Intervenors argue that this court should retain jurisdiction to review the new plan asserting that if they are required to bring a suit, it may take considerable time to obtain judicial evaluation of the new voting plan. But any delay in obtaining

3.  *See* n.2, *supra.*

judicial review is a function of the intervenor's failure to bring an action to test the first plan on constitutional grounds, a basis for review which is not precluded rather by the declaratory judgment procedure invoked by the City or the Attorney General's approval of the new plan. The Voting Rights Act expressly provides that neither approval by a three judge court nor the Attorney General "shall bar a subsequent action to enjoin enforcement of such qualification, prerequisite, standard, practice or procedure." [4] Nothing in the Act, however, vests this court with jurisdiction to retain a moot case to accommodate the intervenor's quest for a forum in which to test a voting plan that has already been approved by the Attorney General under § 1973c, *supra.*

The intervenors also argue that the two plans embody the "same election plan" and no "new plan" has been submitted. Such is not a correct description of the facts.

We accordingly grant the motion to dismiss the pending action on the grounds of mootness.

Counsel may submit motions and memoranda in support of their request for attorney's fees.

*Judgment accordingly.*

## APPENDIX

### UNITED STATES DEPARTMENT OF JUSTICE

### WASHINGTON, D. C. 20530

Nov. 19, 1979

Lee E. Holt, Esq.
City Attorney
7B North, City Hall
1500 Marilla Street
Dallas, Texas 75201

Dear Mr. Holt:

This is in reference to the change from election of the City Council of the City of Dallas at-large with numbered posts to election from eight single-member districts and three numbered at large positions by Ordinance 16355 of the City of Dallas adopted September 19, 1979, and amendments to Chapter III, Section 1 and Chapter IV, Sections 4, 6 and 8 of the Charter of the City of Dallas, Dallas County, Texas, submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act of 1965, as amended. Your submission was received on September 20 1979.

Your submission included a request that we expedite our consideration of the matter. While we have been fully aware of your request throughout the course of our analysis of this change, we have also been aware of the widespread and intense interest in this matter from varied interest groups and individuals in the City, and especially the minority groups affected by the major protections of the Voting Rights Act. We have made a particular effort to invite, encourage and give full consideration to the input of these parties. I have personally reviewed the City's submission as well as the comments of interested persons. I have also met on this matter with four separate delegations of Dallas residents and members of my staff have held numerous meetings with representatives of the city as well as with other interested persons. Because of the extent of this consultation and the extent of our review of your submission, we have been unable to respond until this time.

In reviewing a change such as this under Section 5 of the Voting Rights Act, it is the responsibility of the Attorney General to determine whether that change has the purpose or effect of discriminating against the racial and language minority groups affected, in this instance, blacks and Hispanics. The role of the Attorney General is to determine whether the plan presented by the City is acceptable under the appropriate legal standards of fair representation. If the City's plan meets this legal standard we may not deny pre-clearance on the grounds that the plan does not maximize minority voting strength or that alternate plans may be more acceptable to various interested persons in Dallas.

4. *See* n.2, *supra.*

In the course of our review, we have given careful consideration to the materials you have presented, along with information supplied by the many other interested parties with whom we have been in contact. We have carefully examined some twelve alternative plans drawn by other parties, to the extent that they bear on the issues before us, along with additional plans drawn by our staff, both with respect to their compactness and contiguity and with respect to the opportunities for continuing minority representation in the years to come. While your plan, along with the other proposals we have seen, is based on the 1970 census, we have considered information concerning post-1970 population shifts as they bear on present and future prospects for minority success in Dallas elections, and we have noted the changing role of slating groups in city elections as they bear on minority influence.

As a result of our investigation, we do not find support for the conclusion that the 8–3 plan now before us was adopted for the purpose of discriminating against minority groups on account of their racial or language minority status. Nor can we find that the plan adopted has the effect of discriminating against those groups since, in our view, the position of minorities is enhanced over what it was under the previously existing at-large system. See *Beer v. United States,* 425 U.S. 130 (1976). The plan provides the minority community a fair opportunity to elect three members of the council and our review of more recent election results suggests that minority voters will have a reasonable expectation of influencing the election of persons to the at-large seats.

Under the circumstances, the Attorney General does not interpose any objection to the change in question. However, we feel a responsibility to point out that Section 5 of the Voting Rights Act expressly provides that the failure of the Attorney General to object does not bar any subsequent judicial action to enjoin the enforcement of such change.

I am sending a copy of this letter to the Honorable Barrington D. Parker in order that he might be informed of the result of the administrative Section 5 review prior to the status call scheduled for November 27, 1979 in *City of Dallas v. United States,* Civil Action No. 78–16666 (D.D.C.).

Sincerely,

(s) Drew S. Days, III
Drew S. Days, III
Assistant Attorney General
Civil Rights Division