COMMISSIONERS COURT OF MEDINA COUNTY, TEXAS, et al.

v.

UNITED STATES of America, et al. Antonio Garcia, III, et al., Appellants.

No. 81–1495.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 13, 1982.
Decided July 2, 1982.

Jose Garza, San Antonio, Tex., with whom William L. Robinson, Norman J. Chachkin, Washington, D. C., and Rolando L. Rios, San Antonio, Tex., were on the brief, for appellants.

Keith A. Rosenberg, Washington, D. C., for appellees Commissioners of Medina County, Tex., et al.

Walter W. Barnett, Atty., U. S. Dept. of Justice, Washington, D. C., entered an appearance for appellees United States of America, et al.

Before BAZELON, Senior Circuit Judge, and WRIGHT and TAMM, Circuit Judges.

Opinion for the court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

The question presented in this case is whether parties who intervene as defendants in a declaratory judgment action are "prevailing parties" eligible for attorneys' fees when the case becomes moot. The district court found that defendant-intervenors were not, on the facts of this case, "prevailing parties." Because we believe that the district court gave determinative weight to an improper factor, we vacate its order and remand for reconsideration.

## I.

Under the Voting Rights Act of 1965, as amended (the Act), 42 U.S.C. § 1973 *et seq.* (1976 & Supp. III 1979), certain jurisdictions must seek from the Attorney General or the United States District Court for the District of Columbia preclearance of any "standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964...." *Id.* at § 1973c. Preclearance approval entails a finding, either affirmatively or because the Attorney General interposes no objection, that the standard, practice, or procedure "does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, or [because of membership in a language minority]." *Id.* Failure to obtain preclearance approval prior to implementation of any such standard, practice, or procedure is a violation of the Act.

On January 25, 1980, the Commissioners of Medina County, Texas (the County), instituted a declaratory judgment action against the United States pursuant to section 5 of the Act, 42 U.S.C. § 1973c. The relief sought was a declaration that two

redistricting plans (the 1978 and 1979 Plans), which had failed to obtain preclearance from the Attorney General, were not adopted in furtherance of a discriminatory purpose and would not, in effect, discriminate on the basis of race, color, or other improper criteria.

Appellants Antonio Garcia, III, Jesus Rodriguez, and Lucio Torres, Mexican-American citizens residing and registered to vote in Medina County, intervened as party defendants in the County's suit against the United States.[1] In late 1980, during the pendency of the suit, the County submitted yet another plan (the 1980 Plan) to the Attorney General. The 1980 Plan received preclearance approval on December 16, 1980. Upon notification of the preclearance, the district court dismissed the declaratory judgment suit as moot. *Commissioners of Medina County, Texas v. United States*, Civ. No. 80–0241 (D.D.C. Dec. 18, 1980).

■ Thereafter, Garcia filed a motion for attorneys' fees. Under the Act fees may be awarded, in the discretion of the court, to a "prevailing party." [2] To satisfy this threshold eligibility requirement, Garcia argued:

The result of the litigation was that the [1978 and 1979] reapportionment plans ... were never precleared and a third plan, more favorable to defendant-intervenors, was finally adopted by Medina County. Moreover, the plan adopted by Medina County was very similar to the plan advocated by defendant-intervenors.[3]

The County countered this claim by arguing as follows:

The Intervenors' proposed plan was rejected by both the United States and Medina County as not being supported by competent statistical data and being too broad a change from prior plans. The 1980 Plan was a compromise between the 1979 Plan ... and one proposed by the government. Intervenors' Plan was substantially different from either of the principal parties' proposed plans and played no part in the compromise process. It is unfair and contrary to the spirit of 42 U.S.C.A. § 1988 (Supp.1980) [sic] to award attorney [sic] fees to Intervenors that entered into the lawsuit on their own motion, that opposed the resolution of the matter that was accomplished by the Plaintiffs and Defendant ..., and [that] completely failed in obtaining the adoption of any part of their proposed plan.[4]

On March 10, 1981, the district court denied, without opinion, the request for fees. Appellants sought reconsideration and, on April 1, 1981, the motion was again denied with the following notation:

Denied. Defendant-Intervenors did not prevail in this litigation. In fact they opposed the compromise settlement between plaintiffs and the U. S. which was the basis for dismissing the present litigation.

*Commissioners of Medina County, Texas v. United States*, Civ. No. 80–0241 (D.D.C.

---

1. For ease of reference, we will refer to appellants collectively as "Garcia." The district court granted appellants' motion to intervene as defendants on April 23, 1980, by fiat.

2. 42 U.S.C. § 1973*l*(e) (1976) provides:
 In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
 The discretionary portion of the attorneys' fees inquiry is limited. In order to deny reasonable attorneys' fees to a prevailing party, the court must find that special circumstances exist that would render such an award unjust. S.Rep.No. 295, 94th Cong., 1st Sess. 40 (1974), U.S.Code

Cong. & Admin.News 1975, p. 774. *See, Riddell v. National Democratic Party*, 624 F.2d 539, 543–45 (5th Cir. 1980), and cases cited therein.

3. Memorandum of Points and Authorities In Support of Defendant-Intervenors' Motion for Attorneys' Fees at 3, *Commissioners of Medina County, Texas v. United States*, Civ. No. 80–0241 (D.D.C.1981) (footnotes omitted).

4. Plaintiffs' Response to Defendant-Intervenors' Motion for Attorneys' Fees at 7, *Commissioners of Medina County, Texas v. United States*, Civ. No. 80–0241 (D.D.C.1981) (footnote omitted).

Apr. 1, 1981) (order denying attorneys' fees).

On appeal, defendant-intervenors claim that the district court erred in two respects. First, they contend that the district court's failure to enter formal findings of fact and conclusions of law is reversible error. Second, they argue that the district court's determination that they were not prevailing parties is clearly erroneous. We address these contentions in turn.

## II.

Appellants contend that the district court's denial of attorneys' fees without formal findings of fact and conclusions of law is plain error. We note that this area is not without controversy. *See Consolidated Freightways Corp. v. Kassel,* —— U.S. ——, 102 S.Ct. 1496, 71 L.Ed.2d 187 (1982) (cert. dismissed as improvidently granted) (White, J., dissenting). This Court has previously held that when attorneys' fees are awarded, district courts must "adequately articulat[e the] underlying reasons" for the award. *Copeland v. Marshall,* 641 F.2d 880, 901 n.39 (D.C.Cir.1980) (en banc). It would thus seem anomalous to find that a court completely denying fees need not state *any* reasons.

■ We need not travel far into this particular thicket because the district court in this case made a finding on the one fact—whether defendant-intervenors were prevailing parties—that is dispositive of any attorneys' fees motion at this early stage of a fees proceeding. Although it cannot be gainsaid that the district court could have expounded further upon its reasoning, we believe that the terse statement rendered in response to the motion for reconsideration provides sufficient insight into the court's rationale to meet any requirement there may be that the underlying reasons be adequately articulated. Accordingly, we reject Garcia's "plain error" argument and turn to the merits of the claim that the district court erred in failing to find appellants "prevailing parties."

## III.

■ Generally, a defendant may not recover attorneys' fees unless the court finds that the plaintiff's suit was frivolous, vexatious, or without foundation. *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421–22, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). There are, however, situations where the procedural posture of a particular case renders the general rule inapplicable. In *Prate v. Freedman,* 583 F.2d 42 (2d Cir. 1978), for example, fee claimants intervened as defendants in a reverse discrimination suit challenging an affirmative action program instituted pursuant to a consent decree obtained by the fee claimants in a prior civil rights action. Although the intervening defendants in *Prate* were awarded fees based upon a finding that plaintiffs' suit was unreasonable and vexatious, the court noted that the argument that the equities underlying defendant-intervenors' request for fees were "little different from those associated with the typical successful minority-group plaintiff" was "not without force." *Id.* at 46 & n.2. Similarly, in *Baker v. City of Detroit,* 504 F.Supp. 841 (E.D.Mich.1980), another challenge to an affirmative action plan, defendant-intervenors were awarded fees. The court there noted that the attorneys' fees statute "is to be liberally construed to effectuate its purposes. . . . The procedural posture of the case should not be dispositive." *Id.* at 850 (citations omitted).

■ Moreover, the legislative history of the attorneys' fees provision of the Act expressly recognizes that fees may be awarded in the situation with which we are confronted:

> In the large majority of cases the party or parties seeking to enforce such rights will be the plaintiffs and/or plaintiff-intervenors. However, in the procedural posture of some cases (e.g. declaratory judgment suit under Sec. 5 of the Voting Rights Act) the parties seeking to enforce such rights may be the defendants and/or defendant-intervenors.

S.Rep.No.295, 94th Cong., 1st Sess. 40 n.42 (1974), U.S.Code Cong. & Admin.News 1975,

p. 807. It is thus clear from the case law and the legislative history that when the procedural posture of a case places the party who seeks to vindicate rights guaranteed by the Constitution in the position of defendant, the restrictive *Christiansburg Garment* rule is not applicable.[5] Accordingly, neither appellants' status as intervenors nor as defendants precludes an award of fees under the Voting Rights Act.

## IV.

 It is now well settled that a suit need not proceed to final judgment on the merits in order for a party to "prevail." *See Maher v. Gagne,* 448 U.S. 122, 129–30, 100 S.Ct. 2570, 2574–2575, 65 L.Ed.2d 653 (1980). The legislative history of the Voting Rights Act notes that "for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief." S.Rep. No.295, 94th Cong., 1st Sess. 41 (1974), U.S. Code Cong. & Admin.News 1975, p. 808. In addition, it is not necessary that there be a consent judgment or a negotiated settlement. A party may be considered to have prevailed "when remedial action by [the other party] effectively moots the controversy . . . ." *Iranian Students Association v. Sawyer,* 639 F.2d 1160, 1163 (5th Cir. 1981).

In order to determine whether the district court's reliance on the appellants' objections to the 1980 Plan was justified, it is necessary to examine the scope and proper focus of the "prevailing party" inquiry. In the absence of a merits adjudication, courts have experienced some difficulty determin-

ing precisely what circumstances justify a finding that the fee claimant has prevailed. Courts have developed a two-prong test to govern the inquiry: first, the party must have substantially received the relief sought, and, second, the lawsuit must have been a catalytic, necessary, or substantial factor in attaining the relief.[6] *See, e.g., Chicano Police Officer's Association v. Stover,* 624 F.2d 127, 131 (10th Cir. 1980). The position of claimants as defendant-intervenors, however, requires some modification of the test. Before considering the test to be applied, we must examine some of the circumstances that necessitate treating declaratory judgment actions instituted by a state or political subdivision under the Act differently than other cases that do not proceed to final judgment.

By statute, a redistricting plan, such as those at issue in the present case, can be precleared only by the Attorney General or the district court through a declaratory judgment action. Once a plan has been submitted to the Attorney General, although interested parties may voice their opposition or support of the plan, the final decision is the Attorney General's alone. If the plan is precleared, that decision is not itself subject to judicial review.[7] *See City of Dallas v. United States,* 482 F.Supp. 183, 185 (D.D.C.1979) (three-judge court). These facts combine in the context of a declaratory judgment action to place a defendant-intervenor in an unusual position. Although by the grant of intervention he has become a party, by statute he is precluded from having any actual impact on the approval or disapproval of what appellees here call a "compromise plan" submitted to the Attorney General during the course of litigation.

---

5. It is not happenstance that in the cases discussed above the defendants who were awarded fees were also intervenors. Having voluntarily entered the suit, a defendant-intervenor's position can more readily be analogized to that of a plaintiff. Accordingly, appellees' argument that it is unfair to award fees to defendants who entered into the suit on their own motion is devoid of merit.

6. The standards for awarding fees under the Voting Rights Act are generally the same as under the attorneys' fees provisions of the 1964 Civil Rights Act. *See* S.Rep.No.295, 94th

Cong., 1st Sess. 40 (1974). In addition, the "prevailing party" inquiry is generally the same for any type of case in which there has been no judgment on the merits. Accordingly, the precedents cited in this opinion are not restricted to Voting Rights Act cases.

7. Preclearance by the Attorney General, however, does not foreclose the possibility of judicial scrutiny of the *plan.* A party may bring suit to enjoin the implementation of such a precleared plan. *See* 42 U.S.C. § 1973c (1976).

The defendant-intervenor is thus powerless to participate in a meaningful way in any "settlement" or "compromise" negotiations.

A defendant-intervenor cannot withhold approval of the plan in the hopes of receiving terms more favorable to his interests. The submission of a "compromise plan" to the Attorney General, as a practical matter, strips a defendant-intervenor of all bargaining power. Furthermore, unlike a settlement in which some but not all parties participate, the nonparticipating party may not continue to litigate. Nor may the non-participating party present to the court objections to the compromise settlement. *See id.* at 186. With these unique characteristics in mind, we now consider the two-prong prevailing party test as it applies to suits such as the present one.

### A. *The Objective*

In order to satisfy the first prong of the test, fee claimants must show that the objective sought to be accomplished *by the intervention* has been attained. One of the objectives of any intervening defendant in a section 5 declaratory judgment action is to prevent court approval of the plan or practice sought to be declared nondiscriminatory. At first glance, it would appear that any resolution of the suit that does not result in approval of the subject plan must be viewed as the attainment of this objective.[8] When the case becomes moot due to the preclearance of a plan that is not the subject of the suit, however, we must look beyond the threshold objective. It is conceivable that plaintiffs could submit to the Attorney General, and obtain preclearance approval of, a plan *less* advantageous to the intervenors' interests than the plan that is the subject of the suit.[9] Accordingly, the court must determine whether the final re-sult represents, in a real sense, a disposition that furthers the interests of the defendant-intervenors.

On this point, we find the case of *Bonnes v. Long*, 599 F.2d 1316 (4th Cir. 1979), instructive. There, the Fourth Circuit noted that the "prevailing party" inquiry "is properly a pragmatic one . . . . Its initial focus might well be on establishing the precise factual/legal condition that the fee claimant has sought to change or affect so as to gain a benefit or be relieved of a burden." *Id.* at 1319. The outcome, "in whatever form it is realized," is measured against this benchmark; a comparison of the two must reveal "an actual conferral of benefit or relief from a burden." *Id.* In the case at bar, the 1978 and 1979 Plans, as the benchmark, should be compared to the 1980 Plan, the outcome. If the interests of intervenors have been furthered by the differences shown among the plans, intervenors "have been successful on the central issue in the litigation," *Connor v. Winter*, 519 F.Supp. 1337, 1342 (S.D.Miss.1981) (three-judge court), and the first prong of the test has been satisfied.

 The above analysis necessarily implies that the County's argument that Garcia should not be awarded fees because the intervenor's proposed plan was not adopted must fail. Fee claimants under the Act need not show that they have prevailed on every aspect of the case or that their proposed plan was adopted in order to be found "prevailing parties." *See Ramos v. Koebig*, 638 F.2d 838, 845 (5th Cir. 1981); *Connor v. Winter*, 519 F.Supp. at 1342. We believe, rather, that this argument is relevant to the equity of awarding fees and not to the prevailing party issue.[10]

---

**8.** *Cf. Fain v. Caddo Parish Police Jury*, 564 F.2d 707, 709 n.3 (5th Cir. 1977) ("in preventing the implementation of the objectionable plan the appellant 'prevailed on an important matter in the course of litigation . . . .' ").

**9.** For example, in a case challenging an at-large election system, the court found a conflict between the interests of black citizens and Mexican-American citizens. The at-large system

was declared unconstitutional because it diluted the voting strength of blacks; the proposed remedy—an exclusive single member district plan—would tend to decrease the ability of Mexican-Americans to participate in the political process. *See Lipscomb v. Wise*, 643 F.2d 319, 321 (5th Cir. 1981).

**10.** *See* discussion *infra* at pp. 442–443.

## B. *Substantial Factor*

 When a *plaintiff* seeks a fee award, the second prong of the inquiry is often couched in terms asking whether the *lawsuit* was a catalyst motivating defendants to provide the primary relief sought by the litigation, *see, e.g., Robinson v. Kimbrough,* 652 F.2d 458, 465 (5th Cir. 1981), or whether the lawsuit was a necessary factor in obtaining the relief. *Id. See also Nadeau v. Helgemoe,* 581 F.2d 275, 281 (1st Cir. 1978). When it is a *defendant* who seeks fees, however, it is obviously inappropriate to ask whether *the lawsuit* was a catalyst in achieving the result because, after all, the defendant did not institute the suit.

The court must make an objective assessment of the proceedings to determine whether *the defense of the suit, e.g.,* the promise of an aggressive defense strategy or the spectre of extended litigation, led plaintiffs to take the action that resulted in the mooting of the case. Because this portion of the inquiry involves facts that are totally within the control of the plaintiffs, the court must rely on whatever objective data are available. For these purposes, it is useful for the court to consider the chronological sequence of events and draw conclusions from the facts at hand. *See Robinson v. Kimbrough,* 652 F.2d at 466; *Nadeau v. Helgemoe,* 581 F.2d at 281.

 In determining whether the defense of the suit was a causal, necessary, or substantial factor in obtaining the result, two concerns mandate that the focus of the inquiry be on the collective accomplishments of both the named and the intervening defendants. First, in a case that involves multiple defendants and that has not

proceeded to trial, it is almost impossible for the court to determine whose efforts persuaded the plaintiffs to abandon their litigation endeavors and take action that, if successful, would moot the case. Second, viewing all defendants' efforts collectively places suits that have not proceeded to final judgment on the same par with cases that have resulted in a final merits adjudication.[11] At this stage of the inquiry the court need only determine that the intervenors in fact actively participated in the proceedings. If the court finds that the record, in conjunction with the submissions of the parties on this issue, fairly shows that the plaintiffs' actions were in response to the opposition offered by both the named and intervening defendants in the case, the second prong of the test has been satisfied, and defendant-intervenors should be found to be "prevailing parties."

 A determination that a party has "prevailed," however, means only that fee claimants are *eligible* for attorneys' fees. The court must then consider whether a fee award would be "unjust" under the particular circumstances of the case. S.Rep.No. 295, 94th Cong., 1st Sess. 40 (1974). We believe that many of the arguments advanced by the County in this case are more relevant to this stage of the inquiry than to the prevailing party issue.

Accordingly, in the exercise of its discretionary function to determine whether an award of fees is just under the circumstances of this case,[12] the court should consider whether the net result achieved is so far from the position originally propounded by the fee claimants that it would be stretching the imagination to consider the result a

---

11. In cases that have proceeded to a final adjudication on the merits and in which there are participating defendant-intervenors, if the result is a judgment that the plan or practice in question is discriminatory, the court would have no need to determine whether the defendant-intervenors' participation in the suit was a necessary factor in obtaining the judgment. We believe that upon a final judgment in favor of defendants, the court must assume that a defendant-intervenor is a prevailing party. *But cf. Ross v. Horn,* 598 F.2d 1312 (3d Cir. 1979) (plaintiff can be prevailing party even though

final judgment entered against plaintiff), *cert. denied,* 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980). A review of the equities of awarding fees to intervenors would be made during the phase of the fee procedures that questions whether there are circumstances present in the case that would render an award of fees unjust. We see no reason to advance the point at which this inquiry is made simply because the case has not proceeded to final judgment.

12. *See supra* note 2.

"victory" in the sense of vindicating the rights of the fee claimants. If the victory can fairly be said to be only a pyrrhic one, then an award of fees would presumably be inappropriate. The court should also consider the divergence, if any, between the positions espoused by the named defendants and the intervenors. If there is a considerable difference in these two positions, and if the result obtained can be viewed as adopting *only* the position of the named defendants, this factor would add considerable support to a finding that, although the result furthers the intervenors' interests, an award of fees to them would be unjust.

In addition, we believe it proper for the court to consider whether the defendant-intervenors' participation was necessary to protect their interests and furthered the public policy embodied in the Voting Rights Act. A determination of this nature is usually made at the time intervention is sought and normally will not require reevaluation unless some evidence to the contrary has come to light during the interim.[13]

It is at this point that the court should also consider whether a fee claimant's efforts had its own independent impact on the particular outcome of the case. It is not sufficient that intervenors were parties whose interests were furthered by the result achieved. Fee claimants must show that their participation in the case was not passive and that it was not a mere duplication of the efforts expended by the United States.[14] Our discussion of factors to be considered in this context is not, of course, intended to be an exhaustive list of relevant concerns.

## V.

■ In the case at bar, the district court found that defendant-intervenors had not prevailed. This determination was apparently premised solely upon intervenors' opposition to the preclearance of the 1980 Plan. Although the simplicity of such a resolution is appealing, the prevailing party determination must be based upon consideration of all the circumstances that led to the final disposition of the case. *See Parker v. Matthews*, 411 F.Supp. 1059, 1064 (D.D.C.1976), *aff'd sub nom. Parker v. Califano*, 561 F.2d 320 (D.C.Cir.1977). Applying the test and considering the factors set forth above, we find that this was not a proper basis for resolution of the prevailing party issue.

It appears that the district court focused on the factors that led the Attorney General to give preclearance approval to the 1980 Plan rather than on the factors that led the County to abandon its litigation efforts, at least temporarily, and submit an alternate plan. Once the 1980 Plan was submitted to the Attorney General for approval, the result was entirely out of the hands of both the County and the intervenors. As we have noted, in this type of proceeding there is virtually no possibility of a settlement involving *all* the parties. Unless we are to rule that a defendant-intervenor cannot be a prevailing party unless the case proceeds to a final judgment on the merits—a result that would be contrary to the statute, legislative history, and case law—the focus must be on the factors that prompted *the County* to submit the alternate plan,[15] rather than on factors, such as intervenors' objections, that were meant to affect the Attorney General's preclearance decision.

In addition, we note that section 5 of the Act provides in part that "[n]either an affirmative indication by the Attorney General that no objection will be made nor the

---

**13.** Intervention in section 5 declaratory judgment actions brought by a state or political subdivision should not be granted as a matter of course. The primary responsibility for vindication of the public interest in these cases has been entrusted to the Attorney General. *See Apache County v. United States*, 256 F.Supp. 903, 908 (D.D.C.1966) (three-judge court) (section 4 declaratory judgment action).

**14.** *See, e.g., Baker v. City of Detroit*, 504 F.Supp. 841, 849 (E.D.Mich.1980).

**15.** *But cf. Caserta v. Kelly*, 507 F.Supp. 561 (S.D.Tex.1981) (three-judge court) (Voting Rights Act plaintiffs found to be prevailing parties because their suit, although eventually mooted, motivated the government to institute a separate suit against the same defendants).

Attorney General's failure to object, nor a declaratory judgment entered under this section shall bar a subsequent action to enjoin enforcement of such [plan]." 42 U.S.C. § 1973c. Although the preclearance of the 1980 Plan effectively extinguished the controversy that existed between the County and the United States, under the express terms of the Act, it did not extinguish any controversy that may exist between the intervenors and the County. *See City of Dallas v. United States*, 482 F.Supp. at 185. The Act specifically preserves the right of other persons to bring an action to enjoin the enforcement of a precleared plan. When plaintiffs seek to resolve the controversy they have raised in the declaratory judgment action by submitting a different plan to the Attorney General, defendant-intervenors should not be faced with a Hobson's choice of acquiescing in the plan and possibly foregoing their right to seek an injunction or raising their objections and foregoing attorneys' fees for which they are otherwise eligible.[16]

If in all other pertinent respects appellants can be considered to have prevailed, then the Attorney General's preclearance of a plan to which appellants objected should not be the sole basis upon which the prevailing party issue is resolved. Inasmuch as it appears that the district court gave controlling weight to this factor, the district court's order is vacated, and the case is remanded for further consideration in light of this opinion.

On remand, because the prevailing party issue is vehemently contested, the court should accompany its decision on said issue with a statement of reasons. If the court finds that intervenors have prevailed but that a fee award would be unjust, such a finding should also be accompanied by a statement of reasons. Should the court find a fee award appropriate, a reasonable fee should be awarded in accordance with this court's prior pronouncements. *See Copeland v. Marshall*, 641 F.2d 880 (D.C.Cir.

1980) (en banc); *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319 (D.C.Cir.1982).

*It is so ordered.*

---

**16.** Although the issue has apparently never been litigated, it is arguable that if intervenors consented to, or formally gave approval to, the 1980 Plan they would be estopped to seek an injunction in a separate suit.