Charles RILEY, Plaintiff,

v.

William J. McCARTHY, et al.,
Defendants.

Civ. A. No. 88–3157.

United States District Court,
District of Columbia.

March 8, 1989.

Paul Alan Levy, Alan B. Morrison, Public Citizen Litigation Group, and Christine Allamanno, Teamsters for a Democratic Union, Washington, D.C., for plaintiff.

Gary Witten, Diane Savage, Intern. Broth. of Teamsters, Washington, D.C., (James T. Grady, Gen. Counsel, Intern. Broth. of Teamsters, of counsel), for defendants.

## MEMORANDUM AND ORDER

HAROLD H. GREENE, District Judge.

Plaintiff, a member of the International Brotherhood of Teamsters (IBT) and a smaller organization known as Teamsters for a Democratic Union (TDU), sought a temporary restraining order under the Labor–Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. §§ 401 *et seq.*, charging that the IBT was violating his right to a meaningful vote and to speak effectively to other members about a proposed collective bargaining agreement. Specifically, plaintiff sought to delay balloting on the proposed National Signal Delivery Service Agreement until ten days after he had been provided a copy of the complete national agreement. This would enable him to study the Agreement and to disseminate literature to his fellow members expressing his views and the views of the Teamsters for a Democratic Union (TDU).

A hearing on the motion was held on November 4, 1988. At the hearing, the union stated that it was providing copies of the complete agreement to local unions. Members could inspect the agreement at the union offices, but the IBT was not providing copies to members or directing its local offices to make copies available to members. Because the complete agreement, with all of its local supplements, was hundreds of pages long, the Court suggested that interested members would not be able to examine the agreement fully unless a copy was made available to them.

Based on the union's representations that members would be given copies of the agreement, the Court denied the motion for a temporary restraining order. In addition, the Court set a further hearing for November 10, 1988 and stated that if plaintiff had not received a copy by then, it would seriously consider granting a temporary restraining order. Following the hearing, plaintiff was given a copy of the full agreement by his local union office.

Claiming that he prevailed in this case, plaintiff now seeks to recover attorneys' fees and costs. A prevailing party in a suit brought under the LMRDA is entitled to attorneys' fees under the common benefit doctrine. *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). Thus the question is whether plaintiff is the prevailing party in this case and whether the lawsuit provided a benefit or service to union members.

## I

### *Plaintiff Prevailed*

■ For purposes of recovering attorneys' fees, a party need not proceed to judgment on the merits in order to be considered the prevailing party. All that is necessary is that the suit is not frivolous, the party substantially obtains the relief sought and that the lawsuit is an important factor in obtaining that relief. *See Grano v. Barry*, 783 F.2d 1104, 1108–11 (D.C.Cir. 1986); *Commissioner's Court of Medina County, Texas v. United States*, 683 F.2d 435, 440–41 (D.C.Cir.1982).

■ Prior to the institution of this lawsuit, plaintiff had received no answer from IBT regarding his request for a complete agreement. The date of the balloting was fast approaching, although plaintiff had limited information as to what the date was. Defendants have provided no evidence that they intended to provide plaintiff with the information he sought even in the absence of a lawsuit. To the contrary, even at the hearing on the motion for a temporary restraining order, the IBT indicated that it did not intend to provide copies to members, but rather would allow them to inspect the complete agreement at local union offices. It was not until after the hearing, and after the Court had expressed doubt as to whether the inspection of the agreement at union offices would be sufficient, that the union made copies of the full agreement available to plaintiff.

In examining whether there is a causal relationship between litigation and results, Courts can "consider the chronological sequence of events and draw conclusions from the facts at hand." 683 F.2d at 442. The chronological sequence of events in this case indicates that the litigation was an important factor leading to plaintiff's receipt of the full agreement he sought. Thus although it was not ultimately necessary for the Court to grant plaintiff's motion for a temporary restraining order, plaintiff's suit was not frivolous and it was an important factor contributing to plaintiff's eventual receipt of the information he sought. Plaintiff is the prevailing party in this action.

## II

### *Common Benefit*

Defendants contend that attorneys' fees are not available under the common benefit doctrine in this case. They argue that because plaintiff did not obtain copies for other members the information obtained by plaintiff was primarily for his personal benefit. Because it is clear that plaintiff's purpose in seeking the information was to prepare and disseminate literature regarding the complete agreement to other union members, and because that is in fact what he did, this argument is without merit.

In addition, defendant asserts that plaintiff provided no benefit to union members in general by forcing the union to provide a complete copy of the agreement because IBT has furnished such copies to union members in the past. Thus the litigation accomplished nothing that could not have been achieved without litigation. Contrary to defendants' assertions, past practice of the union is not necessarily evidence that democratic practices continue. A new General President of the IBT assumed office in July of 1988. Since that time there is

evidence that the union's past willingness to provide information to its members has ended. Two lawsuits have been filed in this district alone by union members seeking information regarding negotiated contracts. *Riley v. McCarthy*, Civil Action No. 88–3157; *Carothers v. McCarthy*, Civil Action No. 88–2773. In both cases the information sought was similar to information that had been provided in the past. The purpose of the LMRDA is to protect union members' rights to free speech, voting rights, and rights of assembly. Any time that union practice or policy shifts so as to infringe those rights, union members are entitled to bring suit under the LMRDA. In the event that the suit is successful, as in this case, other members benefit from such a suit.

Finally, the benefit in this case is not simply the theoretical benefit to union members of simply prevailing in free speech litigation under the LMRDA. The provision of information in this case was cited by Judge Joyce Hens Green in her recent decision in *Carothers v. McCarthy*, Civil Action No. 88–2773 (Feb. 7, 1989). In *Carothers*, Judge Green held that the IBT was required to provide information as to the changes negotiated in a carhaul contract to members of the TDU at the same time that it provided this information to local union representatives. Although Judge Green stated that plaintiff's argument in that case that the denial of such information could constitute the denial of a right to a meaningful vote could stand on its own, she also noted that it was "bolstered" by the fact that similar information had previously been imparted to other union members, such as plaintiff in this case. *Id.* at 10. Thus the success of plaintiff in this case has benefitted union members in a very concrete way by contributing to a strong statement as to the information that must be provided to union members in order to ensure their right to a meaningful vote. *Carothers v. McCarthy*.

### III

### *Amount of Attorneys' Fees*

Defendants do not contest the amount of the attorneys' fees except in regard to

Christine Allamanno. With respect to Ms. Allamanno, they maintain that because she is a member of a lay organization, she and her organization may not be complying with the requirements of *NTEU v. Department of the Treasury*, 656 F.2d 848 (D.C. Cir.1981). In an affidavit submitted with plaintiff's reply brief, however, Ms. Allamanno states that her fees will be placed in a separate litigation fund in order to satisfy the requirements of *NTEU*. The Court finds no reason to doubt this statement and it will therefore approve Ms. Allamanno's fee request. *See Jordan v. Department of Justice*, 691 F.2d 514, 516 n. 14 (D.C.Cir. 1982).

Accordingly, it is this 8th day of March, 1989

ORDERED that plaintiff's request for attorneys' fees totalling $5,291.30 be and it is hereby granted; and it is further

ORDERED that plaintiff's request for costs totalling $264.76 be and it is hereby granted.