**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WESTCHESTER FIRE INSURANCE
COMPANY,
               *Plaintiff-Appellee,*

NORTHWEST AIRLINES, INC.,
           *Intervenor-Appellant,*

         v.

PHIL MENDEZ, doing business as
Professional Aircraft Line Service,
                 *Defendant.*

No. 07-17383

D.C. No.
CV-05-01417-PMP

OPINION

Appeal from the United States District Court
for the District of Nevada
Philip M. Pro, District Judge, Presiding

Argued and Submitted April 17, 2009
San Francisco, California

Filed October 28, 2009

Before: Dorothy W. Nelson, Marsha S. Berzon and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton

14607

**COUNSEL**

Jeffrey A. Eyers and Jeffrey A. Ehrich (argued), Leonard Street and Deinard, Minneapolis, Minnesota; David N. Frederick and Charles H. McCrea, Lionel Sawyer & Collins, Las Vegas, Nevada, for the intervenor-appellant.

Erin Fury Parkinson (argued) and Margaret Diamond, McGlinchey Stafford, New Orleans, Louisiana; Thomas J. Lincoln, Nicholas B. Salerno, and James M. Barrington, Lincoln, Gustafson & Cercos, Las Vegas, Nevada, for the plaintiff-appellee.

**OPINION**

CLIFTON, Circuit Judge:

Westchester Fire Insurance Company brought a declaratory relief action against Phil Mendez, its insured policyholder under a commercial general liability insurance policy. Westchester contended that it had no obligation to defend or indemnify Mendez against a certain claim because he failed to give proper notice to the insurance company of the claim. The injured party, Northwest Airlines, whose airplane was allegedly damaged by one of Mendez's employees, intervened in the action. The district court entered default against Mendez for repeatedly failing to appear for his deposition. Based on that default, the court entered a default judgment in favor of the insurance company, giving Westchester the declaration that it sought. Northwest appeals, contending that it should have been permitted to defend against the declaratory relief action on its own. We agree, vacate the default judgment, and remand for further proceedings.

## I.  Background

Defendant Phil Mendez owned and operated an aircraft maintenance business under the name Professional Aircraft Line Services ("PALS").[1] Mendez provided maintenance services for aircraft at the McCarran International Airport in Las Vegas. Northwest Airlines was one of his customers, under a contract that required Mendez to purchase and maintain commercial general liability insurance.

Mendez was insured under an Airport Owners and Operators General Liability Policy issued by Westchester. As is commonly the case, the policy provided that Mendez was required to give prompt notice of any possible claim:

> You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. . . If a claim is made or "suit" is brought against any insured, you must (1) Immediately record the specifics of the claim or "suit" and the date received; and (2) Notify us as soon as practicable. . . . You and any other involved insured must: (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit" . . . .

This action arises out of an incident on February 6, 2002 in which an aircraft owned by Northwest sustained substantial damage when it rolled down an embankment at McCarran Airport. A Mendez employee was in the cockpit at the time of the incident. Mendez did not report the incident to Westchester.

A few months later, in July 2002, Northwest, through its

---

[1]This factual narrative is primarily drawn from the order entered by the district court on November 5, 2007. For clarity, Mendez and PALS will both be referred to here as "Mendez."

counsel and its own insurer, sent a letter to Mendez, notifying him of Northwest's claim against Mendez and requesting that Mendez forward the correspondence to his insurer. Despite Northwest's request, Mendez did not notify Westchester.

More than a year later and more than twenty months after the plane was damaged, in November 2003, Northwest directly notified Westchester of the episode and of Northwest's claim against Mendez. This was the first time Westchester had been informed of the incident.

Westchester's claims agent, Ace USA, tried several times to get in touch with Mendez, requesting that Mendez contact Westchester and reminding Mendez of his obligations as the insured under the policy. At one point, in February 2004, Mendez contacted Ace and indicated he would provide all documents in his possession relating to the claim. When it had not received the material by May 2004, Ace contacted Mendez by phone. He again agreed to provide all relevant documents, including material from the Federal Aviation Administration allegedly absolving Mendez of any liability. He did not follow through on that promise, however. Despite efforts by Ace to follow up, Mendez had no further contact with Ace and never provided the materials.

In November, 2004, Northwest's insurer notified Ace that Northwest had filed suit against Mendez in Minnesota and that Mendez was in default in that action. Shortly thereafter, Ace, on Westchester's behalf, issued a denial of coverage letter to Mendez based on Mendez's failure to cooperate and failure to notify Westchester or Ace of the lawsuit. The letter was hand delivered to and acknowledged by Mendez on November 29, 2004.

Northwest obtained a default judgment against Mendez in Minnesota state court in the amount of $10,608,673, on January 11, 2005. Almost ten months later, on November 5, 2005, apparently in reaction to a judgment debtor's examination

scheduled by Northwest in pursuit of its default judgment, counsel for Mendez made a demand against Westchester for a defense. Westchester offered to provide Mendez with counsel to attempt to set aside the default judgment in favor of Northwest, subject to a reservation of rights, but Mendez did not respond to the offer.

A few days later, on December 1, 2005, Westchester filed this diversity action in federal district court in Nevada seeking a declaratory judgment that Mendez breached his duties under the policy, that Mendez had forfeited the right to make a claim under the policy, and that Westchester had no duty to defend or indemnify Mendez. Mendez filed an answer on December 30, 2005. Westchester filed an amended complaint on June 14, 2006. Mendez did not answer the amended complaint.

In the meantime, on March 3, 2006, Northwest moved to intervene in the action filed by Westchester. The district court granted Northwest's motion to intervene on March 27, 2006. As will be discussed below, Northwest did not file a pleading in its own behalf in the lawsuit in the form of either an answer to Westchester's complaint or of any affirmative claim of its own, despite the requirement for such a pleading in Rule 24(c) of the Federal Rules of Civil Procedure. It was permitted by the district court to intervene, nonetheless.

Westchester made repeated attempts to depose Mendez, but Mendez never attended the scheduled depositions. Sometime later, Mendez's attorneys filed a motion to withdraw as counsel due to inability to communicate with their client and failure to receive payment, which the district court granted on August 9, 2006.

Westchester then moved to strike the answer filed on behalf of Mendez or to compel Mendez's deposition. The court granted the motion to compel and denied the motion to strike, a magistrate judge holding that there was not at that point a

clear record of delay and disobedient conduct warranting the entry of a default judgment and that additional effort should be made to secure Mendez's participation.

Westchester hired a private investigator to attempt to serve Mendez personally. The investigator confirmed Mendez's address and attempted to serve him at the address on multiple occasions. The investigator also left notes at Mendez's residence and with his three nearest neighbors. After the investigator was unable to serve Mendez personally, Westchester served Mendez with the Fourth Amended Notice of Deposition of Phil Mendez via certified mail, which was returned marked "unclaimed."

The deposition of Mendez did not occur. Westchester again moved to strike the answer filed on behalf of Mendez and, further, for entry of default judgment. The district court granted the motion to strike and entered a default judgment against Mendez under Rule 37(d) for the failure to respond to discovery, in an order entered November 5, 2007.

In the order, the district court held that Northwest, as a party to the suit, was bound by the default judgment entered against Mendez. The court's order explained that ruling:

> The Court will not exempt Northwest from the effects of a default judgment against Mendez because no authority supports such an exemption. No duty to intervene exists, and a decision not to intervene does not expose a non-party to a proceeding's preclusive effects. *Kourtis v. Cameron*, 419 F.3d 989, 998 (9th Cir. 2005). But, if a party chooses to intervene, a grant of intervention makes the intervenor a full party. *Comm'rs Court of Medina County, Tex. v. United States*, 683 F.2d 435, 440-41 (D.C. Cir. 1982). And, a party is bound by a judgment in litigation. *Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991) (quoting *Hansberry v. Lee*, 311

U.S. 32, 40 (1940)). A judgment "among parties to a lawsuit resolves issues as among them . . . ." *Martin v. Wilks*, 490 U.S. 755, 762 (1989), superseded by statute on other grounds. Joinder as a party subjects parties to the Court's jurisdiction and binds them to a judgment. *Westlake N. Prop. Owners Ass'n v. City of Thousand Oaks*, 9115 F.2d 1301, 1306 (9th Cir. 1990) (citing *Martin*, 490 U.S. at 762).

Northwest was not obligated to intervene. Now that it has, however, the judgment binds it as a party. Thus, this Court will not specifically exempt Northwest from the effects of a default judgment against Mendez. . . . A default judgment against Mendez may affect Northwest's ability to recover for the incident, but whether this judgment might preclude Northwest from bringing separate litigation against Westchester is a distinct issue not presently before the Court.

In the same order, the district court denied several motions by Northwest, including a motion for leave to file an answer, a motion for summary judgment based on a theory that Northwest was an intended third-party beneficiary of the insurance contract between Mendez and Westchester, a discovery motion, and a motion for trial by jury. The order specifically declared "that Westchester has no duty to defend or to indemnify Phil Mendez, doing business as Professional Aircraft Line Service, for the underlying claim that is the subject of the suit against Mendez in Minnesota." The order entered judgment in favor of Westchester and against "Defendants," apparently referring to both Mendez and Northwest.

Northwest filed a timely notice of appeal.

## II.    Discussion

Northwest's principal argument on appeal is that Northwest should not have been held bound by the entry of default and

default judgment against Mendez, and that the district court should have limited itself to entry of default, not default judgment, against Mendez. Before we can reach that issue, however, we must deal with a threshold objection by Westchester —that Northwest lacks standing to appeal because of its failure to file a pleading in the district court.

### A.   Northwest's standing

Westchester argues that Northwest lacks standing to appeal because it presents no case or controversy for this court to decide. Westchester maintains that because Northwest did not file an answer or a complaint and did not adopt any pleading filed by another party, it has no interest to assert. Westchester's argument is both inconsistent with precedent and lacking in logic.

**[1]** It is true that Federal Rule of Civil Procedure 24(c) requires that a motion to intervene "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which the intervention is sought." Fed. R. Civ. P. 24(c). Northwest did not present such a pleading, nor did it seek leave to file a pleading until months after Westchester moved to strike Mendez's answer and just two weeks before entry of the district court order that is the subject of this appeal.

**[2]** That does not mean that Northwest does not have an interest in this case or standing to bring this appeal, however. Northwest's interest is obvious: it wants to be able to collect its judgment against Mendez from the Westchester insurance policy and it cannot do that if Westchester is not liable under that policy. That interest was explicitly identified in Northwest's motion to intervene, which asserted that it sought "to protect its interest in the proceeds of the insurance policy as satisfaction of [the default] judgment" it had obtained against Mendez in Minnesota. That motion specifically stated that a "default in the declaratory judgment action [against Mendez]

would be fatal to Northwest's interest in collecting the insurance proceeds." The district court recognized Northwest's interest, and it granted the motion to intervene.

**[3]** Westchester offers no substantive argument that Northwest does not have an actual interest. Indeed, it affirmatively acknowledges that Northwest, as an allegedly injured third party, has an independent right to litigate coverage. It simply seeks to capitalize on Northwest's failure to file a pleading as called for by Rule 24(c). But Northwest's interest did not disappear because of that procedural misstep. We have made clear that the failure to comply with the Rule 24(c) requirement for a pleading is a "purely technical" defect which does not result in the "disregard of any substantial right." *Shores v. Hendy Realization Co.*, 133 F.2d 738, 742 (9th Cir. 1943). "Courts, including this one, have approved intervention motions without a pleading where the court was otherwise apprised of the grounds for the motion." *Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992). *See* 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1914 (3d ed. 2009) ("If the intervenor is content to stand on the pleading an existing party has filed, it is difficult to see what is accomplished by adding to the papers in the case a new pleading that is identical in its allegations with one that is already in the file.").

**[4]** The Supreme Court established some time ago that an actual controversy can exist between an insurer and the allegedly injured third party even though that third party is not a party to the insurance contract. *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273-74 (1941). Northwest has standing to bring this appeal.

## B. *Entry of default judgment*

Mendez has not appealed the district court's order. Northwest does not defend Mendez's failure to appear for deposi-

tion or question whether there was sufficient basis for the district court to take action against Mendez under Rule 37(d). Northwest argues, however, that it is entitled to defend against Westchester's declaratory judgment action in its own right and that the district court should not have entered a default judgment in the action against all defendants based on Mendez's failure to appear for a deposition. We agree.

**[5]** As a general rule, default judgments are disfavored; cases should be decided upon their merits whenever reasonably possible. *See Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985). It has long been established that, where there are several defendants, the transgressions of one defaulting party should not ordinarily lead to the entry of a final judgment, let alone a judgment fatal to the interests of other parties. As the Supreme Court stated more than a century ago:

> The true mode of proceeding where a bill makes a joint charge against several defendants, and one of them makes default, is simply to enter a default and a formal decree *pro confesso* against him, and proceed with the cause upon the answers of the other defendants. . . . But if the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike—the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all.

*Frow v. De La Vega,* 82 U.S. 552, 554 (1872).

**[6]** A default entered against an insured policyholder, Mendez, should not prevent an injured third party, in this instance Northwest, from proceeding on its own behalf. The argument for permitting another party to proceed is especially powerful in the context of third-party liability insurance, where the insured may lose interest and the injured party has

the primary motivation to pursue the claim. In so holding, we join at least two other circuits.

In *Hawkeye-Security Ins. Co. v. Schulte*, 302 F.2d 174 (7th Cir. 1962), an insurer sought a declaratory judgment that it had no obligation to defend or indemnify its insured under an automobile liability policy for claims arising out of an automobile collision. As in our action, the insured party was held to be in default, in that case for failing to file an answer, and the insurance company persuaded the district court to extend the default to apply to the injured party, which had answered the complaint. *Id.* at 175. The Seventh Circuit vacated the judgment entered by the district court:

> [The insurance company] argues that through the default of [the insured drivers] the allegations of the complaint are to be taken as true. This argument assumes that they were the only parties entitled to contest the allegations of the complaint. Since [the injured person] was a proper party, the default of [the insured] defendants may not preclude [the injured person's] right in this respect.

*Id.* at 177. The court further stated that the injured party "being a proper party to an actual controversy with [the insurer] should be heard to assert any proper defense raised by his answer to the complaint." *Id.*

In another case involving an automobile liability policy, the Third Circuit similarly held that the default of the insured policyholder should not affect the injured third party's ability to defend against a declaratory action brought by the insurance company:

> Concluding that the injured party has an independent, and not a derivative right, to be heard, is not only jurisprudentially sound, but is also realistic: "Certainly from a pragmatic viewpoint, it is quite

true that in many of the liability insurance cases, the most real dispute is between the injured third party and the insurance company, not between the injured and an oftentimes impecunious insured."

*Federal Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 354 (3d Cir. 1986) (quoting 6A J. Moore, *Moore's Federal Practice* ¶ 57.19). The court went on to state that "[i]n terms of fairness, the injured party should be able to present its case upon the ultimate issues, even if the insured does not choose to participate." *Id.* at 355. The court reasoned that "it would be anomalous to hold that the [injured party] should not be given an opportunity to establish their case against [the insurer] because of a default which they could not prevent," and that the injured party therefore "had standing and . . . [its] rights are independent and not derivative of [the insured party]." *Id.*

[7] It would be similarly inappropriate in our case to extend the default by Mendez to Northwest. Northwest was not responsible for the failure of Mendez to appear for his deposition. Northwest was properly permitted to intervene in the action. Default was not entered against Northwest, so there is no valid basis to deny it the opportunity to try to defend against Westchester's claim for declaratory relief.

[8] Westchester argues that Northwest cannot prevail against such a claim, because Mendez failed to give proper notice of the claim to Westchester, as required under the policy. Perhaps that will turn out to be the conclusion. But that was not the basis for the judgment entered here by the district court. The district court held Mendez in default for failure to appear for his deposition. The default and the subsequent judgment did not result from a determination that Mendez's failure to notify the insurance company about a potential claim relieves the insurer from liability. Northwest contends that it will be able to overcome Mendez's failure to notify Westchester. We express no view on the factual and legal arguments on that issue briefly described to us by Northwest.

We hold only that Northwest should not be precluded by the default of Mendez in the litigation from presenting those arguments and having them adjudicated on the merits.

## III.   Conclusion

We vacate the default judgment and remand the case for further proceedings.

**VACATED and REMANDED.**