**F. Mckinley BROWN, Plaintiff,**

v.

**William J. BOLGER, Defendant.**

**Civ. A. No. 80–3015.**

United States District Court,
District of Columbia.

Aug. 13, 1984.

---

June D.W. Kalijarvi, Washington, D.C., for plaintiff.

Wayne P. Williams, Asst. U.S. Atty., Washington, D.C., for defendant.

## REPORT AND RECOMMENDATION

JEAN F. DWYER, United States Magistrate.

Following the settlement of this multiple count employment discrimination suit, the parties in the above-captioned case were referred to this Court by the Honorable Oliver Gasch, Judge, to conduct all further proceedings in connection with plaintiff's application for an award of attorneys' fees. In formulating the report and recommendation found within, we find that a brief review of the procedural history of this case is in order.

### Background

The parties reached a settlement on December 28, 1981. Following the settlement, plaintiff filed an application for attorneys' fees. Defendant filed a motion for extension of time in which to respond and maintained that the fee application was insufficient in light of *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319 (D.C.Cir.1982) ("NACV"). Defendant complained, *inter alia*, that plaintiff's application provided neither specific evidence of the prevailing community rates nor specific evidence of the actual billing practices of the firm seeking the award. Accordingly, he lodged interrogatories and a request for documents. By these discovery requests defendant sought information which would, if provided, remedy or underscore any perceived insufficiency in plaintiff's application. Plaintiff opposed defendant's motion on four grounds. The most significant were plaintiff's assertions that defendant sought information which was irrelevant as a matter of law and that such discovery was oppressive and extremely costly. In due course, Judge Gasch granted defendant's motion and ordered plaintiff to respond to defendant's discovery requests (Order of November 22, 1982). Plaintiff partially complied with this order and on March 3, 1983, moved this Court for a protective order. In his motion for a protective order, he essentially restated the position articulated in the opposition to defendant's motion for extension of time. Plaintiff maintained that he had set forth sufficient information to enable the Court to determine the prevailing market rate. Further, plaintiff noted that production of extensive data on counsel's billing practices was not required by this Circuit and in any event would be very costly. This Court denied plaintiff's motion for a protective order (Order of March 28, 1983).

Plaintiff completed his response to defendant's interrogatories on June 14, 1983. On July 13, 1983, plaintiff moved this Court to impose sanctions on defendant. Plaintiff maintained that defendant failed to comply with the Court's November 22, 1982 order which required defendant to respond to plaintiff's application for attorneys' fees within ten business days of receipt of plaintiff's response to defendant's first interrogatories and request for production of documents. This Court denied plaintiff's motion for sanctions and directed defendant to file an opposition to plaintiff's application for attorneys' fees.

On August 25, 1983, defendant filed an opposition to plaintiff's application for award of attorneys' fees and costs.

### Report

■ In *Copeland v. Marshall*, 641 F.2d 880 (D.C.Cir.1980) ("Copeland III"), the court articulated a formula for calculating attorneys' fees. The fee setting begins with a determination of the "lodestar", which is the number of hours reasonably expended on the litigation of a case multiplied by a reasonable hourly rate. *Id.* at 891. The figure derived from this formula is the starting point from which an attorneys' fee award is calculated. We now address the first element of that formula: the number of hours reasonably expended.

### Hours Reasonably Expended

■ Before the Court can ascertain whether the number of hours expended on the litigation is justified, we must first determine whether plaintiff is a prevailing party, and the extent to which he prevailed.

Plaintiffs are only compensated for claims upon which they ultimately prevail. *Copeland,* 641 F.2d at 891–92. Therefore, determination of the reasonable number of hours expended requires a preliminary inquiry into plaintiff's success in the litigation. This inquiry is never simple in a case involving multiple claims (some of which may overlap). It is made much more difficult in a case such as this one where there has been no adjudication on the merits. In *Commissioners Court of Medina County, Tex. v. United States,* 683 F.2d 435 (D.C. Cir.1982), the court observed that "[i]n the absence of a merits adjudication, courts have experienced some difficulty determining precisely what circumstances justify a finding that the fee claimant has prevailed." *Id.* at 440. To facilitate this inquiry, the court in *Medina County* adopted a two-prong test to determine precisely the circumstances which justify a finding that the fee claimant has prevailed. "[F]irst, the party must have substantially received the relief sought, and second, the lawsuit must have been a catalytic, necessary, or substantial factor in attaining the relief." *Id.* at 440.

Defendant concedes that the plaintiff is a prevailing party, but argues that plaintiff should not be awarded the entire amount of fees claimed. Defendant observes that plaintiff's complaint contains ten distinctly different claims for relief. He characterizes these as unrelated claims and maintains they are analagous to separate lawsuits. Accordingly, the government concludes that each claim should be viewed separately and that no fee should be awarded for any unsuccessful claim.

■ It is plaintiff's position that he should receive compensation for the time spent on the litigation by his counsel because he was the prevailing party. This presumes that plaintiff prevailed on every aspect of his multifaceted claims against the Postal Service. In *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the court recognized that there is no certain method of determining when claims are related or unrelated.

However, the court did offer this observation:

> [C]ounsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. *Id.* at 1940.

In this case it is clear that the claims made by plaintiff are separate and can be easily distinguished on a claim-by-claim basis.

Therefore, we agree with defendant's characterization of plaintiff's claims for relief as separate suits. Accordingly, any claims upon which plaintiff did not ultimately prevail will be excluded and fees will not be awarded for those claims. *See NACV,* 675 F.2d at 1327. In making this determination the Court will apply the test which was articulated in *Medina County.*

### Count I

■ Plaintiff changed his employment position from mail carrier to distribution clerk in 1973. He contends that he had an understanding with the Postal Service that he would not work on Saturday and Sunday and also he would be assigned to permanent light duty status because of a job-related illness. He claimed that the Postal Service did not honor that agreement. In Count I of the initial complaint, filed November 24, 1980, plaintiff sought the return of his non-scheduled days from Wednesday and Thursday to Saturday and Sunday.

In addition to the return of his non-scheduled days of Saturday and Sunday and the permanent light duty status, plaintiff sought to recover pay retroactively due to the change in his non-scheduled days. In the Settlement Agreement, plaintiff's non-scheduled days were changed to Saturday and Sunday.

It is defendant's position that plaintiff received partial relief because plaintiff was not guaranteed that the change in non-

scheduled days was permanent and he did not receive any retroactive pay. We disagree with defendant.

Plaintiff in this instance received substantially all that he demanded in Count I of the initial complaint. He did not receive retroactive pay, but he did receive the nonscheduled days of Saturday and Sunday which, if changed, must be done in accordance with provisions of the collective bargaining agreement. Additionally, because of his complaints to the EEOC, plaintiff claimed that the Postal Service retaliated by assigning him work beyond his physical capability. Plaintiff has been guaranteed that no further reprisals will be taken (Agreement at ¶ 8) and has been assigned to light duty status (Agreement at ¶ 5).

Applying the test articulated in *Medina County*, it is clear that plaintiff substantially received the relief sought and the lawsuit was "a catalytic, necessary, or substantial factor in attaining the relief." 683 F.2d at 440.

### Count II

■ Plaintiff applied for a transfer to the Oakland Post Office which was denied. He maintained that this occurred because defendant did not include in his personnel file an explanation for plaintiff's apparent excessive absence from work. Plaintiff claimed these absences were due to a job-related injury. He argued that the Postal Service's failure to explain these absences caused the personnel office at Oakland to believe that his small sick leave balance was attributable to non-job related illness and/or injury. Plaintiff concludes that this resulted in his transfer being denied.

In the Agreement, defendant agreed to send plaintiff's personnel record to Oakland and permitted plaintiff to inspect that folder before it was forwarded. In addition, plaintiff received priority consideration at Oakland for the next available clerk position (Agreement at ¶¶ 2–3).

Once again defendant argues that this amounts to partial relief. He notes that the Postal Service did not assume liability for plaintiff's rejection for the position at

Oakland and did not agree to transfer plaintiff or create a position for him or make any retroactive payments as a condition of his rejection. While this is correct, we cannot agree that this amounts to partial relief.

In the instant case, it was plaintiff's desire to have his entire personnel record submitted to Oakland and that the Postal Service clarify any ambiguity in the file regarding his absence from work. In light of the settlement agreement, we are satisfied that as a result of this lawsuit, plaintiff received a benefit on the issue complained of, and is therefore, entitled to an award of attorneys' fees.

### Count III

■ Plaintiff claimed that his representative, Mr. Lenny O. Davis, was refused permission to take administrative leave to attend an EEOC hearing in May 1978. Mr. Davis was therefore unable to attend. As a result, the EEOC hearing was delayed for seven months. Plaintiff maintains that the decision to deny Mr. Davis' request for administrative leave constituted a reprisal for a previous EEO complaint filed by plaintiff against the Postal Service in 1973. Defendant contends that it was not the policy of the Postal Service to grant administrative leave to attend EEO hearings. Plaintiff countered, arguing that Mr. Davis had been allowed to attend such hearings on four other occasions for the purpose of representing other employees.

Plaintiff sought revision of the Postal Service's rules regarding permission of administrative leave for representatives to attend EEO hearings. In September 1981, in fact, the Postal Service revised its policy regarding administrative leave for the representatives. Presently, the Postal Service grants administrative leave to representatives to attend EEO hearings.

Plaintiff maintains that he prevailed on this issue. We think he paints with too broad a brush. For its part, defendant contends that the Postal Service had contemplated such a change in its policy and

858

plaintiff's lawsuit was not a catalyst in bringing about such a policy change. On balance, we find defendant's position to be more persuasive than plaintiff's.

To prevail on this issue, plaintiff must demonstrate that his lawsuit was the catalyst which brought about the Postal Service's change in policy regarding administrative leave. This requires a showing that there was a "causal connection" between the lawsuit and the attainment of the desired result. Only upon such a showing will fees be awarded. *Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir.1978). *See, e.g., Parham v. Southwestern Bell Telephone Co.*, 433 F.2d 421 (8th Cir.1970), where fees were awarded in a Title VII action, even though plaintiff did not prevail. There the court found that it was apparent that the lawsuit served as a catalyst, prompting defendant to bring its employment practices into compliance with federal law. *Id.* at 429. *Cf. Robinson v. Kimbrough*, 652 F.2d 458, 467 (5th Cir.1981), (where the court remanded the case for a determination of whether plaintiff's lawsuit was a substantial factor or significant catalyst in bringing an end to certain discriminatory practices).

In the case at bar, this Court has not been provided with any substantial evidence by which we could conclude that there is a nexus between plaintiff's lawsuit and the Postal Service's change in policy. Accordingly, plaintiff is precluded from recovering attorneys' fees on this issue.

## Counts IV–VI

Defendant submits that plaintiff prevailed on these issues. We agree. Plaintiff substantially received the relief sought and the lawsuit was "a catalytic, necessary, or substantial factor in attaining relief." *Medina County*, 683 F.2d at 440.

## Count VII

■ Plaintiff alleged that the denial of a credit union loan of $2,500.00 was the direct result of the Postal Service's improper action. He maintains that the Postal Service incorrectly stated to the credit union

that he was an employee of the Postal Service, but his employment was temporary or irregular and he was suing the Postal Service in order to keep his job.

In the Agreement (¶ 6), the Postal Service agreed to send a letter to the credit union properly detailing plaintiff's employment status.

In his claim for relief, plaintiff also sought to have the Postal Service devise guidelines for employment references. Defendant maintains that plaintiff only received partial relief. Defendant notes that the Postal Service did not comply with plaintiff's additional demands. Although that is correct, we cannot agree that this amounts to partial relief.

The relief granted under the Agreement goes to the heart of plaintiff's claim. *See Medina County*, 683 F.2d at 442–443 (the net result achieved must be considered in light of the position originally propounded by plaintiff).

## Count VIII

■ In Count VIII of the first amended complaint, filed May 15, 1981, plaintiff sought to remove from his personnel record a letter of warning regarding his absences, which he claimed were the result of his job-related illness. He also sought the removal of a letter which required him to submit to the Postal Service evidence of illness when absent from work. In the Agreement (¶ 4), the letter of warning was to be removed in three months so long as plaintiff improved his attendance record. The letter requiring plaintiff to submit evidence of illness was removed prior to the Agreement.

Defendant maintains that plaintiff merely received a "quid pro quo" concession for purposes of settlement, hence plaintiff did not prevail on this issue. We disagree with defendant. The net result of this claim was the removal of the letter of warning from plaintiff's personnel record. The "quid pro quo" concession to which defendant refers has no effect on the issue of

whether the fee claimant was the prevailing party.

### Counts IX and X

■ In Count IX of the second amended complaint, filed July 31, 1981, plaintiff maintains that he was singled out and held up to ridicule by Mr. Hinson, his acting general foreman. Mr. Hinson allegedly told plaintiff's supervisors that plaintiff could not be trusted to work one of the details normally assigned to him.

In Count X, plaintiff maintains that the reevaluation of his qualifications to receive federal employee's compensation payments for sick leave and for medical care related to his on-the-job injury was instigated as a reprisal action against him for his complaints of discrimination.

Defendant maintains that plaintiff did not prevail on either Count. Defendant notes that these claims were dismissed by Magistrate Margolis in a Report and Recommendation, dated November 22, 1981, and that said claims were withdrawn by plaintiff pursuant to the Agreement (Agreement ¶ 9). Therefore, defendant concludes that plaintiff cannot claim that he prevailed on these issues.

Plaintiff argues that he prevailed on these claims because the Agreement provides that the Postal Service will not take any reprisal action against him (Agreement at ¶ 8).

It is true that the Agreement provides that the Postal Service will not take any reprisal action against plaintiff. However, we do not believe that, standing alone, this provision supports plaintiff's claim that he prevailed on Counts IX and X.

As a preliminary matter it must be observed that this "reprisal provision" is related to relief under Count I. Further, in light of the particular circumstances in this case, we are unwilling to accept plaintiff's argument that the reprisal provision is related to the claims made in Counts IX and

X. After all, these claims were not only dismissed by Magistrate Margolis, but were also withdrawn by plaintiff.

It would be incongruous to hold that, having withdrawn these claims, plaintiff nevertheless prevailed on these claims. We decline to do so. Accordingly, we do not find that plaintiff substantially received the relief sought nor do we find that these claims were a catalyst in obtaining any relief for plaintiff.

### Hours Reasonably Expended

■ We now consider the number of hours reasonably expended by plaintiff in this litigation. We noted that an attorney will not be awarded fees for claims on which she or he did not ultimately prevail. Similarly, counsel will not be compensated for hours in which she or he engaged in frivolous or unnecessary work.

Our Circuit made this clear in *Copeland III* stating, "it does not follow that the amount of time actually expended is the amount of time reasonably expended".[1] Further, [w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. at 1939; *See also Copeland*, 641 F.2d at 902–903.

With this in mind, we turn to the fee application. To facilitate our inquiry we have divided the fee application into three categories: hours expended at the administrative level; hours expended in district court; and hours expended in fee litigation.

### Litigation at the Administrative Level

On the administrative level plaintiff prevailed, in part, on Counts IV, V and VI. The EEOC Examiner, Robert Fabia, found discrimination on the basis of physical handicap. He recommended that (1) plaintiff be assigned to light duty status based on his existing medical condition; (2) plaintiff's medical restrictions be placed on his reference card; (3) plaintiff not be assigned

---

1. *See Copeland v. Marshall*, 641 F.2d at 891; *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319 (D.C.Cir. 1982), "fees are not recoverable for non-productive time ...." *Id.* at 1327.

to work which is beyond his physical capacity unless his medical restrictions are accommodated; and (4) any reference to or record of unwarranted disciplinary action against plaintiff be expunged from the Post Office records. Defendant accepted Mr. Fabia's recommendation. However, plaintiff did not prevail on the remaining claims which were presented below and appealed to the District Court.

■ It is clear in this Circuit that a fee claimant will be compensated for the number of hours reasonably expended on claims in which he or she ultimately prevailed. Plaintiff's action before the EEOC was a prerequisite to bringing suit in District Court. Accordingly, success or failure at the administrative level is not dispositive of whether plaintiff ultimately prevailed. Hence, plaintiff will receive compensation for the reasonable number of hours at the administrative level.

In *Kulkarni v. Alexander*, 662 F.2d 758, 766 (D.C.Cir.1978), the court determined that a prevailing plaintiff is entitled to attorney's fees for legal services performed in prior litigation. This includes legal work performed at the administrative level.

Similarly, in *Parker v. Califano*, 561 F.2d 320 (D.C.Cir.1977), the court considered the scope of fee awards under Title VII cases. The *Parker* court recognized that in order to effectuate the broad remedial purposes of Title VII, it is necessary to accord a liberal interpretation to the attorneys' fee provision. The court observed that "Congress did not intend to limit awards of fees and costs to services performed after filing of the judicial complaint ...." *Id.* at 324–25.

■ *Parker* and *Kulkarni* notwithstanding, in order for plaintiff to be compensated for work at the administrative level the hours claimed must be reasonable and productive. In the case at bar, plaintiff claims 235.4 hours in pursuit of litigation on the administrative level. Defendant argues that 77.4 of these hours are excessive. This time represents hours spent preparing Findings of Fact and Conclusions of Law. Defendant seeks to have these hours reduced or eliminated because plaintiff offered no explanation for the number of hours claimed.

It is difficult to evaluate the reasonableness of the hours claimed when the item in question was not litigated before this Court. In addition, defendant did not provide this Court with a specific objection to these hours. We remind defendant that discovery in the fee litigation of this case was freely granted. However, defendant never sought discovery of this information.

■ We conclude that defendant failed to adequately challenge the reasonableness of the hours claimed by plaintiff for the Findings of Fact and Conclusions of Law. This is clearly defendant's burden.

As the court stated in *Donnell v. United States*, 682 F.2d 240, 250 (D.C.Cir.1982), *cert. denied*, 459 U.S. 1204, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983), "[t]he district court cannot inquire into the reasonableness of every action taken and every hour spent by counsel, and it will consider objections to filed hours only where it has been presented with a reasonable basis for believing the filing is excessive." We cannot agree however with plaintiff's implicit claim that all the hours expended at the administrative level are compensable. Plaintiff made certain claims which were neither successful at the administrative level nor at District Court. As we discussed *supra*, p. 856, these claims are fractionable from the other claims in the suit.

We therefore find it appropriate to reduce the total hours claimed by the amount expended in pursuit of unsuccessful claims. *See Copeland*, 641 F.2d 880, 891 (D.C.Cir. 1980); *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1327 (D.C.Cir.1982) (a prevailing plaintiff will not receive compensation for claims on which the party did not ultimately prevail).

As we discuss *supra*, pp. 857–858, plaintiff did not ultimately prevail on Count III. In that claim, plaintiff sought revision of the Postal Service's regulations regard-

ing administrative leave for representatives to attend EEO hearings. We found this claim without merit. We identified 34.3 hours which plaintiff spent in pursuit of this claim at the administrative level. Accordingly, we have reduced the 235.4 hours claimed at the administrative level to 201.2 hours.

We shall now consider the hours which plaintiff expended in litigating this lawsuit in District Court.

### District Court

We are at a disadvantage in determining what constitutes reasonable hours expended before the District Court since we did not preside over this action. We are nevertheless able to ascertain the reasonableness of many of the hours claimed.

■■■ Courts have identified certain categories of action or inaction which may be indicative of unreasonable time.[2] We apply these categories by making the following inquiries:

(1) Whether plaintiff ultimately prevailed on the issues?

(2) Whether the work performed was unnecessary or non-productive?

(3) Whether there was a duplication of effort in the litigation of this lawsuit? We address the issues in turn.

*Whether plaintiff ultimately prevailed on the issues.*

For the reasons discussed *supra*, pp. 856–859, we conclude that plaintiff prevailed on Counts I, II, IV, V, VI, VII and VIII. We note that plaintiff received the relief sought by these claims. Since we found the claims in Counts III, IX and X to be truly fractionable from the lawsuit, no fee will be awarded for time spent in pursuit of these claims.

The number of hours expended in litigation before the District Court totals 497.76. We identify in plaintiff's petition 19.43 hours which were expended in pursuit of Counts III, IX and X in District Court. Accordingly, we reduce the 497.76 hours by 19.43 hours.

The Postal Service moved to dismiss certain claims in plaintiff's complaint for lack of subject matter jurisdiction. Defendant argued that plaintiff failed to exhaust his administrative remedies. By this motion, defendant sought to have claims dismissed in Count I, III, IV, VII, IX and X. Plaintiff filed an opposition to this motion on November 10, 1981.

On November 23, 1981, Magistrate Margolis submitted a Report and Recommendation which dismissed Counts IX and X of plaintiff's second amended complaint for failure to exhaust all reasonable administrative remedies. Plaintiff's allegation of sex discrimination in Count I was dismissed and his allegations of race, color and sex discrimination in Counts III and IV were also dismissed on the grounds that plaintiff did not file a timely appeal of the dismissal of these claims from the administrative level.

The Magistrate refused however to dismiss plaintiff's claim that the Postal Service supplied erroneous information to a credit union concerning his employment status. This claim was contained in Count VII.

On December 3, 1981, plaintiff filed a motion to modify Magistrate Margolis' Report and Recommendation. This motion, however, was never considered by the District Court.

The parties reached a settlement agreement in January 1982. In the agreement plaintiff did not preserve or reflect any of

---

**2.** *See Copeland v. Marshall,* 641 F.2d 880, 891–92 (D.C.Cir.1980) (a fee claimant will receive compensation for claims on which he or she ultimately prevailed); *Donnell v. United States,* 682 F.2d 240, 250 n. 27 (D.C.Cir.1982) (a fee claimant will not receive compensation for unnecessary work); *National Association of Con-* *cerned Veterans v. Secretary of Defense,* 675 F.2d 1319 (D.C.Cir.1982), "fees are not recoverable for non-productive time ...." *Id.* at 1327; *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1940 (1983) (a fee claimant should exclude hours which are redundant).

the claims which were dismissed by Magistrate Margolis on November 23, 1981.

For this aspect of the litigation, plaintiff expended a total of 54.8 hours. On plaintiff's opposition to defendant's motion to dismiss, counsel spent 28.3 hours. On the motion to modify Magistrate Margolis' Report and Recommendation, counsel for plaintiff spent 26.5 hours.

■ We find plaintiff did not prevail on his motion to modify Magistrate Margolis' Report and Recommendation. Accordingly, plaintiff will not be compensated for the time expended on the motion.

■ On plaintiff's opposition to defendant's motion to dismiss we find that plaintiff was successful with half of this motion. We therefore reduce the total amount of hours claimed in this aspect of the litigation by 40.65 hours. This does not end our inquiry. The fact that plaintiff prevailed on his other claims does not necessarily entitle him to compensation for all the hours expended in pursuit of those claims.

■ In our review of plaintiff's fee petition, we find plaintiff did not exclude any time for hours spent on non-productive or unnecessary work. In our experience, not all hours expended are productive. Therefore, fee applications should reflect hours which are non-productive or unnecessary. By identifying non-productive hours, plaintiff's attorneys would be exercising the type of "billing judgment" mandated by *Copeland.* 641 F.2d at 891. This "billing judgment", however, is sorely lacking in plaintiff's fee application.[3]

We now consider this aspect of the fee petition to determine whether the work performed was unnecessary or non-productive.

Defendant argues in its opposition to plaintiff's application for attorney's fees and costs, that plaintiff claims as legal work time which is excessive, redundant, or otherwise unnecessary.

The hours which are at issue are the following:

■ Plaintiff claims a total of 38.5 hours spent on his first set of interrogatories and requests for documents. On July 16, 1981, Judge Gasch denied approximately one-fifth of the interrogatories. He characterized the discovery as a "fishing expedition" in which plaintiff sought a large amount of generalized and irrelevant information.

We therefore reduce the 38.5 hours by 7.7 hours.

■ Plaintiff also claims 7.55 hours for time spent on his second set of interrogatories. Thirty of the forty-seven interrogatories, however, pertain to Counts IX and X. Plaintiff did not exclude any of the time expended for the thirty interrogatories. We therefore are forced to do so. *Copeland,* 641 F.2d at 888. We find approximately two-thirds of the time to be non-productive. Hence, the 7.55 hours claimed shall be reduced by 4.8 hours.

■ Where the reasonableness of the hours claimed is in question, a fee claimant should provide adequate documentation in which the district court or opposing party can determine the propriety of the hours claimed. *See National Association of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1327 (D.C.Cir.1982).

■ Defendant made extensive inquiry into plaintiff's fee application regarding the number of hours expended on various aspects of this litigation. Plaintiff therefore was aware that the hours claimed in his fee petition would be closely scrutinized. However, throughout his fee petition, plaintiff merged hours which were clearly non-productive with hours which were compensable. For example, counsel claimed 3.15 hours for work on "motion for protective order and answers to interrogatories". (*See* Plaintiff's Second Supplement to Application for Award of Attorney's Fees at

---

**3.** The fee applicant's duty to exercise billing judgment was underscored by the Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933 (1983) "counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 1939, 1940.

3, filed November 15, 1983.) At the time the fee application was made the protective order had been denied and counsel had been compelled to answer certain interrogatories. The time expended on the interrogatories is clearly compensable. The motion for protective order was unsuccessful and therefore not compensable. This apparently was not intentional, but it confuses the issue and is not the way to draft a fee petition.[4] We must exclude those hours of which we are unable to discern the compensable time from non-compensable.

In *Copeland III*, the court notes that a fee petition need not present "the exact number of minutes spent nor the precise activity to which each hour was devoted ...." *Id.* at 891. However, "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1939 (1983).

We find 33 hours to be inadequately documented. We therefore reduce the total number of hours claimed for litigation in District Court by 33 hours. If plaintiff separated the compensable time from non-compensable, it would have made this task much easier. However, we must commend plaintiff. A total of 1,062.21 hours was claimed on the fee petition. The fact that we were obliged to disapprove such a small amount of hours is to his credit.

We now consider whether there was a duplication of effort in the litigation of this lawsuit.

■ The District Court must carefully scrutinize claims for duplication of effort. We are at a disadvantage in this case because we did not preside over the litigation in District Court either before the Judge or the Magistrate. However, in determining the reasonableness of time spent in this case, we shall look to the type of services performed. *See, e.g., Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717 (5th Cir.1974) (if more than one attorney is involved, the possibility of duplication of

effort along with proper utilization of time should be scrutinized).

■ On July 18, 1981, two of plaintiff's attorneys appeared at a status call. This would seem an unnecessary expenditure of time since one attorney is generally appropriate at such a hearing. However, defendant did not question the necessity of this. In the absence of some criticism by defendant we are in no position to judge counsel's determination to use two attorneys. Since we do not consider this to be a "clear misallocation of resources" we are "unwilling to second-guess counsel's judgment". *See Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354, 366 (D.D.C.1983). This completes our review of the time charged to the litigation of the case at the administrative level and in District Court. We now turn to the time claimed for litigation of the fee request.

### Fee Litigation

Plaintiff requests compensation for 329.05 hours which he claims counsel expended in the pursuit of the attorneys' fee award.

■ In this Circuit, it is clear that a fee claimant will be compensated for the reasonable number of hours expended in fee litigation. *See Copeland v. Marshall*, 641 F.2d at 896 (it is well settled that hours reasonably devoted to negotiate and/or litigate a statutory fee award are compensable); *Environmental Defense Fund v. Environmental Protection Agency*, 672 F.2d 42, 62 (D.C.Cir.1982). "Counsel will not be permitted, however, to exercise its judgment [to pursue fee litigation] in a fashion that unnecessarily inflates the losing party's fee liability ...." *Laffey v. Northwest Airlines*, 572 F.Supp. at 369.

■ Although defendant does not contest the number of hours plaintiff expended in pursuit of an award of attorneys' fees, we feel that we should review the hours claimed. This Court presided over a sub-

---

**4.** *See, e.g., Bolden v. Pennsylvania State Police*, 491 F.Supp. 958 (E.D.Pa.1980) (the fee applicants carefully separated hours according to each aspect of the litigation. This gave both the court and the defendant an opportunity to examine the application in detail).

stantial portion of the fee litigation. Hence, we are not at a disadvantage in determining the reasonableness of the hours claimed on this aspect of the litigation.

In our analysis, *infra,* we reject much of the time spent litigating the issue of fees. In this regard, it must be observed that the reduction of hours is best characterized as a self-inflicted wound. Plaintiff's insistence that *NACV* was not controlling in this case underlined the tone of the fee litigation.

Plaintiff argued that *NACV* contradicts the dictates of *Copeland III* and that such contradictions "will likely insure that every fee award will go on appeal until the Court of Appeals *en banc* resolves the contradiction". *See* Plaintiff's Points and Authorities Supporting Plaintiff's Opposition to Defendant's Motion for Extension of Time in Which to File a Response to Plaintiff's Fee Application, at 4 (filed June 1, 1982). It is clear that *NACV* is controlling in this Circuit. *NACV* provides invaluable guidance to attorneys in formulating their fee petitions and to the District Court in ruling on them. Therefore, we shall not delve any further into the merits of plaintiff's argument.

■ In determining the number of hours reasonably expended, we shall consider whether plaintiff ultimately prevailed on the issues and if so, whether the hours expended were unnecessary or non-productive.[5]

At the outset of the fee litigation, defendant sought to extend the time in which to file his opposition to plaintiff's fee application. Defendant noted that he would need more time to conduct discovery into plaintiff's billing rates and procedures. Plaintiff filed an opposition to defendant's motion for extension of time. In that motion, he erroneously argues that discovery closed September 5, 1981. Plaintiff, however, was referring to the date on which

discovery closed for litigation on the merits. It was frivolous to argue that discovery for fee litigation closed in 1981. The issue of attorneys' fees did not arise until January 1982, at which time it was determined that plaintiff was a prevailing party. In addition, plaintiff argued that he supplied defendant with enough information regarding his counsel's billing practices and therefore he was not required to provide any additional information on that matter.

■ Defendant contended that *NACV* permits discovery of a fee claimant's billing procedure. Plaintiff argues that *NACV* is not controlling on this matter. We believe that *NACV* delineates the proper guidelines to which a fee claimant must adhere when confronted with discovery. Hence, defendant was entitled to such discovery. *See NACV,* 675 F.2d at 1329–1331 (discovery against the fee applicant).

■ Plaintiff's opposition was overruled by Judge Gasch. (*See* Order of November 22, 1982.) Accordingly, plaintiff will not receive compensation for the hours expended on this issue. *Id.* at 1327 (fees are not recoverable for non-productive time).

Plaintiff once again endeavored to thwart discovery into his counsel's billing practices by moving this Court for a protective order. However, plaintiff's argument was merely a restatement of his opposition to defendant's motion for extension of time which was overruled by Judge Gasch.

Plaintiff argued that case law does not require production of extensive data on counsel's billing practices. Indeed, plaintiff maintains that he set forth sufficient evidence of counsel's billing practices to enable the Court to determine the prevailing community rate for attorneys' fees. We did not agree with plaintiff. In fact, we were compelled to comment that counsel's reading of the case law was somewhat

---

**5.** It is well established that the courts consider many other factors in the determination of awards for attorneys' fees. In the case at bar, however, we find that these factors are appro-priate for a proper determination of whether the number of hours expended in the fee litigation were reasonable.

muddled. *Cf. Kreysa v. Regan,* No. 80–0901, Report of Special Master at 2 (D.D.C. March 9, 1983) (fee applicant cannot dictate the areas on which discovery will be permitted); *NACV,* 675 F.2d at 1326 (billing practices must be accurately documented).

■ This Court denied plaintiff's motion for a protective order. (*See* Order of March 28, 1983.) Accordingly, plaintiff will not receive compensation for the number of hours expended in pursuit of this issue. *See Copeland v. Marshall,* 641 F.2d at 892 (fee claimant will not receive compensation on issues which he did not ultimately prevail); *NACV,* 675 F.2d at 1327.

On July 13, 1983, plaintiff moved for sanctions alleging that defendant failed to comply with Judge Gasch's Order of November 22, 1982, directing defendant to respond to plaintiff's application for attorneys' fees within ten business days of receipt of plaintiff's response to defendant's interrogatories and request for production of documents. Plaintiff claimed that defendant failed to respond to plaintiff's fee application and the accumulation of unnecessary discovery resulted in delay and increased cost to plaintiff.

■ This Court denied plaintiff's motion for sanctions. This motion did not offer plaintiff any relief nor did it substantially advance his interests. *See Hensley,* 103 S.Ct. at 1938 (the court will award attorney's fees for time spent on a motion which substantially advances a clients' interests). Accordingly, all hours which plaintiff claims on this issue are denied.

■ Plaintiff claims his attorney expended hours in pursuit of two motions, a motion to reconsider the order of Judge Gasch of November 22, 1982 and a motion for clarification, which were never filed with this Court.

In *Copeland III,* the court noted it would not compensate a fee claimant for hours claimed on his or her fee petition which were excessive, redundant, or unnecessary. *Id.* at 891. Indeed, in *Riddell v. Nat'l Dem. Party,* 545 F.Supp. 252 (S.D.Miss. 1982), *aff'd in part,* 712 F.2d 165 (5th Cir.1983), the court required a fee applicant to "indicate if non-productive time or time spent on unsuccessful claims was excluded." 545 F.Supp. at 257.

This Court has not been provided with evidence which would justify the expenditure of the time spent on these motions. We must conclude, without more, that the hours expended on these motions were unnecessary in pursuit of an award for attorneys' fees. *See Hensley,* 103 S.Ct. at 1940–41 (district court has the authority to eliminate hours claimed on unsuccessful issues).

■ It is imperative in a fee petition that a fee claimant distinguish between legal work in the strict sense and clerical work. It is clear that ministerial and clerical matters must not be billed at an attorneys' rate. *See Furtado v. Bishop,* 635 F.2d 915, 920 (1st Cir.1980) (in calculating the lodestar the court should separate work done in relation to the firm's hierarchy "including work that was or ought to have been assigned to a non-lawyer"); *see also In re Clark Oil & Refining,* 422 F.Supp. 503, 512 (E.D.Wis.1977); *Miller v. Mackey Int'l Inc.,* 70 F.R.D. 533, 537 (S.D.Fla. 1976). Where it is found that such a distinction was not made, this Court made the appropriate division.

### Reasonable Hourly Rate

■ Any calculation of attorneys' fees under *Copeland III* is a two-step process. We have determined the reasonable amount of hours charged to the case. We must now consider the reasonable hourly rate which is the prevailing market rate in the community for the type of work for which plaintiff seeks an award. *See Copeland v. Marshall,* 641 F.2d at 892; *NACV,* 675 F.2d at 1325.

In *Copeland III,* the court enumerates several "relevant conditions" which may be used by courts to assess the community rate. The court observed that the "level of skill necessary, time limitations, the amount to be obtained in the litigation, the attorney's reputation and the undesirability

of the case ..." are all important factors to be considered. *Id.*

▮ The factors articulated in *Copeland III* guide courts in making a preliminary determination of the prevailing rate. Notwithstanding, *Copeland III,* our Circuit observed that fixing the prevailing community rate was not a simple task. *NACV,* 675 F.2d at 1325. The court in *NACV* recognized that the prevailing rate is flexible and that based on a variety of factors, different lawyers will command different rates. *Id.* Accordingly, in *NACV,* the Circuit instructed trial courts to determine the prevailing rates based on evidence of: applicant's relevant billing practice, affidavits from other attorneys with similar qualifications and evidence of awards in other cases. *Id.* at 1325–1327. With this in mind, we consider the evidence submitted by fee applicant in connection with these categories.

▮ Fee applicant requests $124.00 per hour for Ms. Kalijarvi and Ms. Delate for work performed on this case in 1982. This figure is somewhat deceptive. It is not the normal billing rate of the firm.[6] Moreover, based on the evidence submitted by counsel, we are not satisfied that this is the prevailing rate for attorneys of similar qualifications working on similar cases. *See, infra,* at 38–44. The requested hourly rate is based upon counsels' assertion that $85.00 was a reasonable hourly rate in 1978, but adjusted for inflation and in accordance with the Consumer Price Index (C.P.I.) for Washington, D.C. Metropolitan Area, $124.00 per hour would be a reasonable rate in 1982. (*See* Plaintiff's Application for Attorney's Fees at p. 25, filed May 17, 1982.) This approach to fee setting was squarely rejected by the court in *NACV.* The court stated in no uncertain terms:

> [T]he method of calculating present fees based on adjustments for inflation and experience is contrary to the teaching of *Copeland III.* The relevant datum is the prevailing community rate for attorneys

of similar qualifications performing similar work, not what rate would be desirable in order to keep pace with inflation or to reward increasing legal expertise. 675 F.2d at 1336–37.

Counsel's adjustment of fees based on the Consumer Price Index is indistinguishable from a fee adjustment based on inflation. Accordingly, we reject the claimed rate of $124.00 per hour. We now turn to the specific evidence submitted by counsel.

### Firm's Billing Structure

Pursuant to an order of this Court, Ms. Kalijarvi finally submitted further evidence of the firm's billing practices. A review of her affidavit reveals that the firm's rate ranged from $75.00 in 1978 to $95.00 in 1982. (*See* Affidavit of June Kalijarvi, filed March 21, 1983.) In August, Ms. Kalijarvi submitted another affidavit, again at the request of the Court. (*See* Affidavit of June Kalijarvi, filed August 9, 1983.) Unlike the previous affidavit it was supported by actual billing slips. The billing slips reflect a rate of $75.00 per hour for partner time and $60.00 per hour for associate time. These were the rates charged for on-going litigation at the time the affidavit was filed—1983. Ms. Kalijarvi attempts to harmonize the rate in the August affidavit with the rates in the May affidavit stating that the "charges [reflect] the prevailing market rate in the community in which the client is located ... and is the equivalent of $125/hour (sic) in Washington, D.C. for similar work." (*See* Affidavit of June Kalijarvi at 2, filed August 9, 1983.) Ms. Kalijarvi offered no support for this assertion. Therefore, we accord it no weight.

On balance, evidence of the fee applicant's billing rate leads us to conclude that the appropriate lodestar is far less than the $124.00 claimed. However, before settling on the appropriate rate, we must review the other evidence submitted.

---

**6.** Plaintiff executed a fee agreement with counsel wherein he agreed to pay counsel $50.00 an hour. The agreement specifically noted that this was a reduced fee and that the firm's normal rate was $80.00 an hour.

*Affidavits of Other Attorneys*

In support of the claimed hourly rate fee applicant submitted affidavits from the firms Arent, Fox, Kintner, Plotkin and Kahn (Arent, Fox) and Hogan and Hartson. The affidavits were submitted in connection with other cases and do not speak to the qualifications of the attorneys in the instant case. Accordingly, we treat them as evidence of the billing structure of those firms. As we discuss, *infra*, they are pieces in the mosaic that is the prevailing rate in the community. Additionally, fee applicant submitted affidavits from Joel P. Bennett and Lawrence S. Lapidus, both partners in small law firms. These affidavits were solicited by counsel for use in this case. They address the issue of the prevailing rate with more specificity, and we find them more helpful than the affidavits of Arent, Fox and Hogan and Hartson.

Mr. Bennett's practice is primarily devoted to employment matters and Mr. Lapidus' practice is primarily in labor and equal opportunity law. Since 1975, Mr. Lapidus' practice has included representation of plaintiffs in employment discrimination cases.

Affidavits are of some help to the Court in ascertaining the prevailing community rate. However, our Circuit has warned that generalized "hail fellow, well met" affidavits from friendly attorneys will not suffice. In *NACV*, the court stated:

> [T]o be useful an affidavit stating an attorney's opinion as to the market rate should be as specific as possible. For example, it should state whether the stated hourly rate is a present or past one, whether the rate is for a specific type of litigation or for litigation in general, and whether the rate is an average one or one specifically for an attorney with a particular type of experience or qualifications. The affidavit should also state the factual basis for the affiant's opinion. 675 F.2d at 1325.

 The court underscored the need for specificity in these affidavits when it observed that "[t]he best evidence [of the prevailing rate] would be the hourly rate customarily charged by the affiant himself or by his firm". *Id.*

Fee applicant relies in part on an affidavit filed by Arent, Fox on its own behalf in an employment discrimination case. (*See Harris v. Group Health Association, Inc.*, C.A. No. 79–0867, Supplement to Defendant's Application for Costs and Attorney's Fee, filed May 11, 1982.) A review of the affidavit shows that from 1979–1981 the billing rates ranged from $70.00 per hour for associates to $115.00 per hour for a partner. In 1980, the billing rate for a partner was $100.00 per hour. The affidavit relies in part on excerpts from the American Lawyer to demonstrate a range of fees charged by ten of the largest firms in the District of Columbia. The fee claimed by affiant was within that range. While the affidavit does not attest to skill or experience of fee applicant in the instant case, we are satisfied that it fairly recites the range of fees charged in the District of Columbia.

The affidavit submitted by Joel P. Bennett is of particular interest to this Court. Mr. Bennett, a practicing attorney in the community, is a member of a small firm similar to that of fee applicant with the same type of "employment" practice. He has been before this Court on several occasions and we are familiar with his qualifications. He was admitted to the D.C. Bar in 1972. By his own estimate, 80 to 90 percent of his total caseload is in the employment field.

 Mr. Bennett averred that his regular hourly rate for employment cases was between $110.00–$125.00 per hour. This affidavit was dated November 9, 1982. The affidavit does not reveal whether this rate is Mr. Bennett's historic billing rate or merely his rate in 1982. When a court attempts to set fees in a case that spans four years it would be more helpful if the affidavits which support the fee claimed identified the reasonable rate for the years in which the work was done. *See NACV*, 675 F.2d at 1325 (affidavits should state whether the hourly rate is present or past).

In our view, failure to characterize the fee as present or past renders an affidavit almost useless. However, in this particular case, we are able to use Mr. Bennett's affidavit since we are aware of his historic billing structure. He has recently made an application for attorney's fees to this Court. *See Alex v. Watt*, No. 80–1608 (D.D.C. February 8, 1984). We will use the evidence in *Alex* to clarify Mr. Bennett's affidavit.

It is clear that "[e]vidence submitted by attorney fee applicants in prior cases may also be relied on ..." to determine the prevailing rate. *NACV*, 675 F.2d at 1326. Mr. Bennett's rate in 1980 was $75.00 per hour and in 1981 it was increased by $10.00 an hour. Accordingly, for the relevant time period in the case at bar, Mr. Bennett's hourly rates were $75.00–$85.00 per hour.[7]

■ The affidavit filed by Lawrence S. Lapidus, also a partner in a small law firm, corroborates Mr. Bennett's historic billing rate. He notes that he had no usual or customary billing rate, especially in employment discrimination cases, and the hourly rate depended on a variety of factors on a case-by-case basis. However, in 1978, Mr. Lapidus, was awarded $75.00 per hour for legal services in an employment discrimination case. For the years 1979 through 1980, Mr. Lapidus notes that rates generally charged by experienced attorneys in small firms ranged between $75.00 and $115.00 per hour. A general range of rates is of little value in the determination of an hourly rate. *See NACV*, 675 F.2d at 1325. However, in 1981, Mr. Lapidus was awarded $85.00 per hour for legal services rendered between September 1979 and May 1981 in an employment discrimination case. Accordingly, for the relevant time period in the case at bar, Mr. Lapidus' hourly rates were $75.00 to $85.00.

In addition to affidavits from other attorneys, fee applicant notes other awards in similar cases. We now turn to review the fees awarded in these cases.

*Awards in Other Cases*

In support of fee applicant's base hourly rate of $85.00 for 1978, counsel lists several cases which she claims are relevant in the determination of the market rate. Fee applicant claims that based on similar awards in: *Bachman v. Pertschuk*, 19 Emp.Prac.Dec. § 9044 (D.D.C.1979) ($75.00 per hour for work performed in 1977); *Roberts v. Solomon*, 26 Emp.Prac.Dec. § 32,039 (D.D.C.1981) ($100.00 per hour for 1976–1980); *Snead v. Harris*, 25 Emp.Prac. Dec. § 31,581 (D.D.C.1981) ($80.00 per hour for 1977); *Crowley v. Haig*, C.A. No. 74–0494 (D.D.C. Sept. 15, 1981) ($75.00 for 1973), and similar awards to applicant's firm in *Jarrett v. Adams*, C.A. No. 76–1824 (D.D.C. Jan. 13, 1982) ($85.00 per hour for work performed in 1978); *Whelchel v. Lewis*, C.A. No. 78–0514 (D.D.C. July 10, 1981) ($85.00 per hour for work performed in 1977–1979), $85.00 is the reasonable hourly rate for Title VII cases in 1978. (*See* Plaintiff's Application for Attorney's Fees at 24 and n. 11 and 12, filed May 11, 1982).

■ The court in *NACV* indicates that awards in other cases may be helpful in determining the prevailing community rate. However, it is clear that in order for these awards to be helpful the awards should be in similar cases of similar complexity and made to counsel with similar qualifications. 675 F.2d at 1325 n. 7. Moreover, fee awards "in other cases are probative of the appropriate community rate only if they were determined based on actual evidence of prevailing market rates ...." *Id.*

We do not find *Bachman, Roberts*, and *Crowley, supra*, to be helpful in determining the market rate. These cases involve class action suits. Litigation of a class action is significantly different from that of an individual employment discrimination case. However, *Snead v. Harris, supra*, is helpful in determining the market rate. Mr. Joel Bennett, who submitted an affidavit in the case at bar, was the attorney in *Snead*. It involved an individual employment discrimination action. Mr. Bennett

7. In the case at bar only 35% of the hours claimed occurred after 1981.

was awarded an hourly rate of $80.00 in 1981 for legal services rendered from June 1977 to May 1980. This rate agrees with Mr. Bennett's historic billing rate. *See* discussion, *supra,* at 43.

■ Fee applicant's counsel notes similar awards to her firm in *Whelchel v. Lewis, supra,* and *Jarrett v. Adams, supra.* Fee applicant points to *Whelchel* to demonstrate that counsel's lodestar hourly rate for the relevant time period was $85.00. Counsel received an hourly rate of $85.00 for legal services in this action. We find that this rate is not representative of counsel's lodestar rate since it includes an adjustment for delay. *See Whelchel v. Lewis,* C.A. No. 78–0514 at 3 (D.D.C. July 10, 1981). Therefore, while this rate reflects a fee award of $85.00 it was not probative of the lodestar rate at that time.[8]

■ Upon review of the foregoing evidence we conclude that the prevailing community rate for partners in the firm of Kalijarvi and Delate is $85.00 per hour.[9] We are also cognizant of the evidence of Mr. Bennett's and Mr. Lapidus' billing rates and we place Ms. Kalijarvi and associates squarely in that range. In reaching this conclusion, we note that counsel's fee agreement with plaintiff set the rate at $80.00 an hour. While we do not find this piece of evidence dispositive of the prevailing rate, it is "highly relevant proof of the prevailing community rate". *NACV,* 675 F.2d at 1326.

This Court is aware that since *Copeland III* this Circuit has explicitly stated that the hourly rate charged by fee applicant is not dispositive of the prevailing community rate and therefore not the sole factor to be considered when calculating the community rate. *See, e.g., North Slope Borough v. Andrus,* 515 F.Supp. 961, 969 (D.D.C.1981), *rev'd on other grounds,* 689 F.2d 222 (D.C. Cir.1982); *NACV,* 675 F.2d at 1326; *Hens-*

ley v. WMATA, 690 F.2d 1054, 1058 (D.C. Cir.1982); *Citizens Coordinating Committee on Friendship Heights v. WMATA,* 568 F.Supp. 825, 830 (D.D.C.1983). In this regard, the court in *Copeland III* evinced a concern that non-profit public interest groups must be compenstated at the same rate prevailing in the community as private firms. This aspect of the fee calculation was meant to benefit the client as well as the attorney. The court explained:

> [W]here a public interest law firm serves as plaintiff's counsel … defendant will be subject to a lesser incentive to settle a suit without litigation than would be the case if a high-priced private firm undertook plaintiff's representation. *Dennis v. Chang,* 611 F.2d 1302, 1307 (9th Cir. 1980). That is so because the marginal cost of each hour of continued litigation would be reduced. *Copeland,* 641 F.2d at 899.

We note that cases, such as *Dennis v. Chang,* concern fee awards to attorneys who have no established fee structure.

■ It is our view, based on the policy considerations clearly articulated in *Copeland III* that where an attorney has a fixed hourly rate and billing structure, it should be given great weight in determining the appropriate market rate. We believe that this reasoning is supported by *NACV.* There, the court notes "the actual rate that applicant's counsel can command in the market is itself highly relevant proof of the prevailing community rate". *Id.* at 1326. However, the court cautioned that "[t]his rate is not what [counsel] would have liked to receive or what the client paid in a single fortunate case, but what on average counsel has in fact received". *Id.*

We conclude, therefore, that where a fee applicant's billing structure is fixed and regular, an application for more than that rate must be supported by strong evidence in the other two categories—affidavits and

---

**8.** This Court was unable to locate *Jarrett v. Adams,* C.A. No. 76–1824 (D.D.C. January 13, 1982), and was not provided proper documentation to discern whether the award was indicative of the market rate for the relevant time period. Hence, without more, we cannot deter-

mine whether this award is probative of the lodestar rate.

**9.** In 1982, Kalijarvi and Delate became Kalijarvi, Delate and Chuzi.

awards in other cases. We do not mean to say that this burden is onerous, but it does require the attorney to come forward with credible evidence of the sort described in *NACV*. *Cf. Hensley v. WMATA*, 690 F.2d 1054, 1058–59 (D.C.Cir.1982) (where counsel's petition for attorney's fees was denied with leave to supplement her petition with information on the prevailing community rate consistent with that outlined in *NACV*).

The evidence submitted by fee applicant, however, is not the type which supports an increase in the hourly rate to the requested amount of $124.00 an hour. After careful review of the affidavits submitted by counsel we find that the range of fees was $75.00–$85.00 an hour for most of the relevant time period in this case. This squares with our finding that $85.00 an hour is the prevailing rate for fee applicant's counsel. For clarification, we observe that the evidence of the billing structure at Hogan and Hartson and Arent, Fox was insufficient to outweigh the evidence of awards to counsel in previous cases, the affidavits of attorneys Bennett and Lapidus (which were specifically solicited by counsel for this case) and evidence of counsel's own billing practices. An award in excess of $85.00 an hour would run contrary to the teaching of the court in *NACV*, which mandates that the "rate is not what [counsel] would like to receive … but what on average counsel has received". 675 F.2d at 1326.

Setting the rate for partners does not end our inquiry into the market rate. In *Copeland III*, the court instructs that "there may be more than one reasonable hourly rate for each of the attorneys, and for each of the kinds of work involved in the litigation". *Id.* at 892. We now turn to the reasonable hourly rate for other attorneys who were involved in this case.

█ The rate of $85.00 per hour is for the work performed by attorneys June Kalijarvi, Ellen Delate, and Mark Andrews. The other two attorneys who worked on this case, George Chuzi and Pamela Shea, are not as experienced as lead counsel and therefore will be awarded a different rate.

In our view there has been insufficient documentation filed in connection with the rates of the associates in fee applicant's firm. It is well settled that the prevailing rate for associates is less than that of a partner. In fact, fee applicant recognizes such a distinction. *See* Plaintiff's Application for Attorney's Fees at p. 25, filed May 11, 1982. Fee applicant states that because Mr. Chuzi and Ms. Shea have less experience than attorneys Kalijarvi and Delate, they should receive a lower hourly rate. We agree.

At the time of the litigation, Mr. Chuzi and Ms. Shea had the following experience: George Chuzi graduated law school in May 1980 and was admitted to the District of Columbia Bar in December 1980. Prior to being admitted to the Bar, Mr. Chuzi worked as an EEOC Specialist in the Headquarters of the Civil Rights Office. Since becoming an attorney he has represented Title VII plaintiffs in this Court and in the United States District Court for the Eastern District of Virginia and appeared before the United States Court of Appeals for the District of Columbia on at least four occasions.

Ms. Pamela Shea graduated law school in 1977. She practiced in Knoxville, Tennessee and was an Assistant City Attorney for the City of Knoxville. She then worked with a private firm in Knoxville, litigating contract disputes and drafting various business partnership agreements, incorporations and tenant agreements. Upon moving to Washington, D.C., she was hired by fee applicant's counsel's firm. She worked as lead counsel and co-counsel in administrative hearings and procedures before the Merit System Protection Board and the Equal Employment Opportunity Commission. Based on the inexperience of Mr. Chuzi and Ms. Shea in Title VII actions, we find that they should be compensated at associate rates. Consistent with the market rates for associates in this community for the time period in question, Mr. Chuzi and Ms. Shea will be compensated at an

hourly rate of $65.00.[10] *See North Slope Burough v. Andrus,* 515 F.Supp. 961 (D.D. C.1981), *rev'd on other grounds,* 689 F.2d 222 (D.C.Cir.1982).

 Fee applicant claims that her law clerks should be compensated at a base hourly rate of $35.00 and each year thereafter should include an adjustment to this rate because of inflation. *See* Plaintiff's Application for Attorney's Fees at p. 26, filed May 11, 1982. Additionally, fee applicant differentiates hourly rates for senior law clerks and junior law clerks. In the Fee Agreement, plaintiff contracted to compensate fee applicant's law clerks at an hourly rate of $25.00. There is no evidence that fee applicant charges reduced rates or varying rates for Title VII cases for law clerk's time. We find the billing rate in the Fee Agreement of $25.00 per hour to be the reasonable hourly rate for the time period in question. Further, fee applicant claims an hourly rate of $15.00 for paralegal time. We find this rate to be reasonable for the relevant time period.

Having set the appropriate lodestar, we must now turn to consider whether there should be an adjustment to the lodestar.

### Adjustment to Lodestar

 Finally, the Court must determine whether any adjustment to the lodestar is warranted. This involves the consideration of three factors: the contingent nature of success; the quality of representation; and compensation for delay in receipt of payment. *See Copeland,* 641 F.2d at 892–94. However, the court in *Copeland III* emphasized that "[t]he burden of justifying any deviation from the 'lodestar' rests on the party proposing the deviation". *Id.* at 892 (citation omitted).

Fee applicant did not request an adjustment to the lodestar and the Court sees nothing in the record to justify one. To the contrary, this case commenced in 1978 and was settled in January 1982. The litigation

of attorneys' fees finally closed on November 15, 1983 with plaintiff's submission of his Second Supplement to his Application for Attorney's Fees. This protracted litigation was primarily a result of fee applicant's tortured interpretation of *NACV.* Fee applicant's failure to comply with the mandates of *NACV* and the order of this Court in providing proper documentation for the prevailing community rate led to a delay in awarding fees.

In *NACV,* the court instructs that "[t]he lodestar fee may ... be adjusted upward to compensate counsel for the lost value of the money he would have received resulting from delay in receipt of payment". 675 F.2d at 1328. The court notes, however, that "[d]elay solely attributable to dilatory actions by plaintiff should ... be discounted". *Id.*

Fee applicant's counsel was recalcitrant in providing this Court with specific evidence of her firm's billing practices. In fact, fee applicant maintained that counsel provided this Court with sufficient information to enable it to determine the prevailing market rate. Moreover, counsel asserted that production of extensive data on her firm's billing practices was not required by this Circuit. *See* Plaintiff's Opposition to Defendant's Motion for Extension of Time at 4, filed June 1, 1982. This reasoning set the tone of the fee litigation. Indeed, much of the delay was occasioned by plaintiff's counsel.

Defendant first sought information regarding plaintiff's counsel's billing rates in May of 1982. *See* Defendant's First Interrogatories to Plaintiff and Request for Production of Documents, filed May 21, 1982. Fee applicant's counsel opposed this discovery request in the strongest terms. Among other things counsel argued that the panel in *NACV* was at odds with the *en banc* decision in *Copeland III.* Specifically, counsel contended that evidence of billing rates was irrelevant to a fee setting

---

**10.** Ms. Joan Bozek became a member of the D.C. Bar in December 1982. Previously, Ms. Bozek was employed as a law clerk with fee applicant's counsel's firm. Accordingly, she will be compensated at an associate's rate for time expended in pursuit of this action after December 1982.

inquiry. On November 22, 1982, Judge Gasch rejected these arguments and ordered counsel to comply with defendant's discovery requests.

By March of 1983, counsel had yet to comply fully with the Court's discovery order, indeed, they sought a protective order from this Court on March 3, 1983. No protective order was granted. In an attempt to move discovery, we permitted counsel to file an affidavit which included a representative sample of the firm's billing rates. At that time, we noted that this fell short of compliance with Judge Gasch's discovery order. However, in light of counsel's recalcitrance we considered it "a step in the right direction". *Brown v. Bolger*, No. 80–3015 at 5 (March 28, 1983). We feel that this brief review of counsel's behavior during discovery supports our conclusion that much of the delay in payment was self-inflicted.

■ We find an adjustment to the lodestar inappropriate for another reason.

It is a common practice to adjust fees to compensate for delay in payment. Many courts effectuate this adjustment by awarding fees at current rates rather than the rate that was in effect at the time the work was done. *See, e.g., Donnell v. United States*, 682 F.2d 240, 254 (D.C.Cir.1982), *cert. denied*, 459 U.S. 1204, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983); *Environmental Defense Fund v. Environmental Protection Agency*, 672 F.2d 42, 60 (D.C.Cir.1982); *Sierra Club v. Gorsuch*, 684 F.2d 972 (D.C. Cir.1982), *reversed on other grounds*, 462 U.S. 680, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983).[11] In *Copeland III* the court considered this form of adjustment noting that "if the 'lodestar' itself is based on present hourly rates, rather than the lesser rates applicable to the time period in which the services were rendered, the harm resulting in the delay in payment may be largely reduced or eliminated". 641 F.2d at 893 n. 23.

11. But *Cf. Bachman v. Miller*, 567 F.Supp. 317, 321 (D.D.C.1983). In *Bachman,* the court held that the unadjusted lodestar should be based on

It is important to recognize that at the time of this Opinion, plaintiff's counsel had been paid $24,512.00 for their work. This represents fees paid by the plaintiff and an interim fee award of $10,000.00 paid by defendant. In this posture, counsel have already received 49% of the total award. This stands in stark contrast to other cases where after protracted litigation counsel had received no payment. *See, e.g., Laffey v. Northwest Airlines*, 572 F.Supp. 354, 380 (D.D.C.1983).

We have no doubt that in such cases an adjustment for delay is clearly appropriate. However, in the case at bar where counsel has received substantial payment for services rendered and where counsel's behavior has contributed greatly to the delay, we find that an adjustment for delay would be inappropriate.

### Costs and Expenses

Upon review of Plaintiff's Application for Attorney's Fees and Supplements thereto, we recommend that plaintiff's counsel be reimbursed for all costs and expenses incurred from this litigation.

■ Plaintiff paid to his counsel a total of $14,512.00 for legal services in this case. (*See* Plaintiff's Answers to Defendant's First Interrogatories and Request for Production of Documents at pp. 4–7.) Counsel shall reimburse plaintiff this amount.

Further, the total award of attorneys' fees shall be reduced by $10,000.00. This reflects the amount which plaintiff received from defendant as an interim fee award. (*See* Stipulation Withdrawing Motion of Plaintiff for an Interim Award of Fees, filed September 17, 1982.)

Accordingly, it is by the Court this 13th day of August, 1984

RECOMMENDED that plaintiff be awarded attorneys' fees in the amount of $40,237.90; and it is

"the prevailing rate at the time of the award rather than the rate in effect at the time the work was performed".

FURTHER RECOMMENDED that plaintiff be awarded costs in the sum of $1,962.16.

The tables below reflect our calculations of the number of hours expended in the litigation and the reasonable hourly rates.[1]

| | Total Hours Claimed | Total Hours Awarded | Rate | Amount Awarded |
|---|---|---|---|---|
| **Attorneys** | | | | |
| Ellen Delate | 623.11 | 461.79 | $85.00 | $39,252.15 |
| June Kalijarvi | 29.3 | 25.45 | $85.00 | $ 2,163.25 |
| Mark Andrews | 42.7 | 27.1 | $85.00 | $ 2,303.50 |
| George Chuzi | 48.4 | 26.5 | $65.00 | $ 1,722.50 |
| Pamela Shea | 12.5 | 11.6 | $65.00 | $ 754.00 |
| Joan Bozek | 19.8 | 2.9 | $65.00 | $ 188.50 |
| **Clerks** | | | | |
| George Chuzi | 2.8 | 1.0 | $25.00 | $ 25.00 |
| Joan Bozek | 24.9 | 1.8 | $25.00 | $ 45.00 |
| Charles Nalls | 205.2 | 119.1[2] | $25.00 | $ 2,977.50 |
| Bruce Kriegman | .4 | .4 | $25.00 | $ 10.00 |
| **Paralegals** | | | | |
| Joellen Brassfield | 47.6 | 47.6 | $15.00 | $ 714.00 |
| Peter Hirzel | 1.0 | 1.0 | $15.00 | $ 15.00 |
| Elizabeth O'Connor | 4.5 | 4.5 | $15.00 | $ 67.50 |
| **Total Hours** | 1,062.2 | 730.74 | | |

**Costs and Expenses**

| Application: | $1,115.79 |
|---|---|
| First Supplement: | $270.28 |
| Second Supplement: | $576.09 |
| Total: | $1,962.16 |

1. Calculating the number of hours expended in this case, the Court found that plaintiff's calculations did not reflect an additional twenty (20) hours expended in the litigation.

2. Mr. Nalls was admitted to the District of Columbia Bar on June 20, 1983. Fee applicant claims .9 hours as attorney time for Mr. Nalls.

This time was expended in filing a motion at District Court. This is clearly clerical work and not properly billable at an attorney's rate. Thus, the 119.1 hours awarded for Mr. Nalls' time includes the .9 hours. *See* discussion, *supra,* at 865.